IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BP EXPLORATION & PRODUCTION, | § | |
| INC., ET AL. | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-CV-03360 |
| | § | |
| NATIONAL OILWELL VARCO, LP, | § | |
| ET AL. | § | |
|     Defendants. | § | |

**DEFENDANTS' COMBINED RESPONSE TO PLAINTIFFS' MOTIONS
TO STAY AND TO CONTINUE SCHEDULING CONFERENCE;
AND ALTERNATIVE MOTION FOR TEMPORARY STAY**

Plaintiffs BP America Production Company, BP Exploration & Production, Inc. and American Home Assurance Company (collectively, "BP") have filed a motion to stay this action in which they admit that the claims they bring here are duplicative of the claims they have brought against the same defendants in another lawsuit filed in the Eastern District of Louisiana one day prior to the filing of this suit. BP tells the Court that it does not actually wish to proceed with this action, but filed it only as a placeholder in case BP's preferred forum, Louisiana, does not have personal jurisdiction over certain defendants. BP also filed a motion to continue the scheduling conference in this case until after the Court rules on their motion to stay and various purported "preliminary" issues.

Defendants National Oilwell Varco, LP, National Oilwell Varco, Inc., National Oilwell Norway AS, Hydralift Amclyde, Inc., and Hydralift, Inc. ("NOV") files this response to ask the Court to deny BP's request to stay this action pending the outcome of the Louisiana suit because Fifth Circuit precedent prohibits this Court from granting that relief under the current posture of BP's two, duplicative actions. NOV asks the Court to allow this case to proceed with pretrial

and discovery matters in Texas, where NOV believes BP's claims will ultimately be decided and where discovery is more convenient and less expensive for all parties, including the plaintiffs. Alternatively, if the Court does not wish to allow the case to proceed in Texas, NOV requests that the Court enter a *temporary* stay of this action only until the Louisiana court issues a ruling on NOV's motion to transfer the Louisiana action to Texas – relief that the Fifth Circuit has endorsed under the circumstances presented.

### SUMMARY OF ARGUMENT

This Court does not have discretion to grant the stay requested by Plaintiffs. Under clear Fifth Circuit precedent, recognized and followed by this and other Texas district courts, if the first-to-file rule applies to this suit, the first-filed court (rather than this Court) is the proper court to determine which of the suits should be permitted to proceed and which should be stayed or dismissed. While this Court is vested with the decision of whether or not to apply the first-to-file rule, if the Court determines that the first-to-file rule applies, it must transfer this suit to the first-filed court for a determination of whether this suit should be dismissed or stayed. No party has requested such a transfer, and transfer would be premature at this point because NOV has filed a 28 U.S.C. § 1404(a) motion to transfer the Louisiana suit to the Southern District of Texas in light of the fact that most of the witnesses, documents, physical evidence, and events upon which liability is predicated can be found in the Southern District of Texas, and few, if any, of these things can be found in the Eastern District of Louisiana.[1]

While the motion to transfer venue is pending in the Louisiana action, NOV would like to proceed in this suit for two reasons. First, regardless of where the suit is ultimately tried, conducting discovery in Texas is less expensive and more convenient for both parties. None of the parties have principal places of business in Louisiana, while parties on both sides have

---

[1] Exh. A, NOV's motion to transfer and memorandum in support thereof.

principal places of business in Houston, Texas.   Additionally, the great majority of witnesses, documents, and physical evidence are located in Houston.   Second, neither party is injured by proceeding with discovery in Texas.   NOV has offered to enter into a Rule 11 agreement to permit discovery in either case to be used in both cases.   Likewise, NOV is willing to agree that any pre-trial agreements reached in either case may be agreed as to both cases.   There is, thus, no need for duplication of efforts, particularly since no discovery is going on in the Louisiana suit.

With regard to Plaintiffs' request to continue the scheduling conference, NOV requests that the scheduling conference proceed as ordered by the Court for the same reasons discovery should proceed in this action.   The case has been on file for more than four months, and NOV would like to advance the ball toward resolution of preliminary issues and commence discovery. Plaintiffs' purported reasons for delaying the scheduling conference are red herrings.   No party has challenged this Court's subject matter jurisdiction, and Hydralift AS will file a motion to dismiss for lack of personal jurisdiction concurrently herewith.   The true impetus for Plaintiffs' request for continuance is that Plaintiffs want to proceed with their claims in Louisiana rather than Texas and think they are more likely to be permitted to do so if less activity has taken place in Texas.   NOV believes that its motion to transfer the Louisiana case to Texas will be granted and BP's claims will ultimately be determined by this Court.   Regardless, NOV is willing to take steps to neutralize BP's concern, such as entering into the Rule 11 agreements discussed above.

Finally, if the Court does not wish to allow this case to move forward, NOV requests that the Court issue only a temporary stay of the case pending the Louisiana court's ruling on the motion to transfer.   While this Court may not grant the stay requested by Plaintiffs under Fifth Circuit precedent, a temporary stay pending determination of a motion to transfer in the first-filed case has been expressly approved by the Fifth Circuit.   Such a temporary stay serves the

interests of good judicial administration and economy because the outcome of the motion to transfer the Louisiana suit to Texas will determine which court must determine which suit should proceed and which suit should be dismissed or stayed.

<div align="center">**ARGUMENT AND AUTHORITIES**</div>

**I.      This Court Is the Proper Court to Determine Whether the First-to-File Rule Applies But Is Not (Yet) the Proper Court to Decide Which Suit Should Go Forward**

The first-to-file rule is a discretionary doctrine pursuant to which a court may dismiss or stay a later-filed action when another case involving substantially similar issues and parties has already been filed. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). The Fifth Circuit has expressly held that, where a district court determines that there is a substantial overlap of issues such that the first-to-file rule applies, the determination of whether to dismiss, stay, or allow the second-filed suit to proceed rests in the hands of the first-filed court. *Cadle Co.*, 174 F.3d at 606.  As this Court has recognized, it "does not enjoy the option of staying the suit," but may only transfer the suit to the first-filed court if it elects to apply the first-to-file rule. *Rosas v. Raytheon Aircraft Co.*, 2007 WL 1520992, *4 (S.D. Tex. May 21, 2007) (not designated for publication) (transferring later-filed suit to the District of Kansas);[2] *see also Huntsman Corp. v. International Risk Ins. Co.*, 2008 WL 1836384, *5 (E.D. Tex. April 22, 2008) (not designated for publication) (transferring later-filed suit to Southern District of Texas); *Chan v. Brother Intern'l Corp.*, 2003 WL 21281678, *3 (N.D. Tex. May 28, 2003) (not designated for publication) (transferring later-filed suit to Northern District of California).

---

[2] The *Rosas* court also explains that, to the extent the Fifth Circuit's transfer requirement in *Cadle* can be read to conflict with its notation in *West Gulf Maritime* that transfer *or stay* may sometimes be appropriate, *Cadle*, which is oft-repeated and rooted in 1910 Supreme Court precedent, trumps *West Gulf Maritime* on the basis of seniority. *Rosas*, 2007 WL 1520992 at *4.  Moreover, there is not actually a conflict between *Cadle* and *West Gulf Maritime* because the "stay" option discussed in *West Gulf Maritime* is not a stay pending resolution of the first-filed case (as is requested here) but a temporary stay pending the first-filed court's determination of a motion to transfer to the later-filed court. *West Gulf Maritime Ass'n*, 751 F.2d at 729, n.1.

Under the current posture of this case, this Court has no discretion to grant the stay requested by BP.  If the first-to-file rule applies here, the Court that decides which of BP's two suits to dismiss or stay and which to allow to proceed depends upon the outcome of NOV's motion to transfer the Louisiana suit to Texas.  If the motion to transfer is granted, this Court would decide which of the two suits should go forward; if the motion is denied, the Louisiana court would decide which suit should proceed.

## II.   All Parties Benefit from Conducting Discovery in Texas Rather than Louisiana

BP filed this suit and the Louisiana suit to recover for property damages suffered on BP's MAD DOG spar during Hurricane Ike.[3]   According to BP's pleadings, it purchased the platform's drilling rig from Pride Offshore, Inc. ("Pride") pursuant to a construction contract, and Pride subcontracted the design, manufacture and installation of the drilling rig's parking brake system to NOV.[4]   BP also alleges that NOV provided training and instruction to Pride regarding operation and maintenance of the system and various warranty, repair, maintenance and other work on the parking brake system.[5]   BP asserts that the parking brakes on the drilling rig failed during Hurricane Ike, causing BP's property damage, and that NOV is liable on the basis of: the design of the parking brake system; the provision of training, instructions, and warnings relating to the parking brake system; express and implied warranties; and installation, maintenance and repair of the parking brake system.[6]

BP America Production Company and National Oilwell Varco, L.P. both have their principal place of business in Houston, Texas;[7] no party has its principal place of business in

---

[3] Plaintiff's original petition, Attachment 4 to Notice of Removal [Doc. No. 1]; BP's complaint in Louisiana action is attached as Exhibit 1 to NOV's motion to transfer (Exh. A).

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] Exh. A, memorandum in support of motion to transfer at 10-11 and exhibits 3 and 10 thereto.

Louisiana. The great majority of the events related to BP's purchase of the drilling rig and NOV's provision of the drilling rig's parking brake system occurred in Houston, Texas.[8] The liability BP asserts in this lawsuit depends upon NOV's conduct in designing, manufacturing, installing and/or maintaining the parking brake system; to the extent this conduct occurred in the United States, it occurred almost exclusively in and around Houston, Texas.[9] Moreover, the majority of key fact witnesses reside in Houston, Texas; the essential non-party witnesses employed by Pride are believed to office and reside in Houston; and a large and cumbersome volume of relevant records, data, physical evidence (recovered parking brakes) and equipment are located in Houston, Texas.[10] For all of these reasons, conducting discovery in Houston is more convenient and less expensive for both Plaintiffs and Defendants.

Moreover, because many of the non-party witnesses and their documents are located in Houston – outside the subpoena power of the Louisiana court – this Court will likely be called upon to oversee such discovery in this district regardless of where the suit ultimately proceeds. This is true with regard to preliminary issues upon which immediate discovery is needed, particularly NOV's motion to transfer the Louisiana suit to Texas. If BP puts into issue NOV's assertions regarding the location and importance of Pride witnesses, witnesses from Pride's offices in Houston will need to be deposed in order to resolve that issue. For this reason alone, the Court should leave this action open and permit discovery herein during the pendency of the motion to transfer the Louisiana suit to Texas.

Another preliminary issue in the case that both parties benefit from addressing and

---

[8] Exh. A, memorandum in support of motion to transfer at 12-13 and exhibits cited therein; Exh. B, Affidavit of Svein Stubstad.

[9] Exh. A, memorandum in support of motion to transfer at 13-19 and exhibits cited therein; Exh. B., Affidavit of Svein Stubstad.

[10] Exh. A, memorandum in support of motion to transfer at 10-21 and exhibits cited therein; Exh. B, Affidavit of Svein Stubstad.

resolving early is NOV's indemnity and insurance claim against BP.  Discovery on this issue can commence in Texas upon completion of the pretrial conference on Monday, January 25, 2010; no pretrial conference has been set in the Louisiana case.  NOV believes that resolution of its indemnity and insurance claim against BP will result in the early resolution of this action, regardless of which court the claims proceed in, and discovery on that issue should commence as soon as practicable.

As noted above, NOV has offered to enter into a Rule 11 agreement to permit any discovery conducted, in either the Texas or the Louisiana action, to be used in either case.  This eliminates the risk of duplicative discovery efforts and makes proceeding with discovery in this action the easy and logical avenue regardless of where BP's claims are ultimately prosecuted.

**III.    The "Preliminary Issues" That BP Invokes Offer No Impediment to Proceeding with the Scheduling Conference**

BP argues that the scheduling conference set by the Court is "premature because one of the defendants, Hydralift AS, has neither answered nor made a special appearance contesting personal jurisdiction and because the removing defendants have reserved their right to object to subject matter jurisdiction."  Both of these concerns can be eliminated.  The Hydralift AS entity served by BP in this lawsuit is a foreign holding company that has no connection to the events and transactions underlying this suit.  Hydralift AS has now filed a motion to dismiss for lack of personal jurisdiction.  In the interest of clarity, it should be noted that there is another, former entity that was called Hydralift AS.  As discussed in NOV's certificate of interested parties, this entity was a Norwegian corporation that merged with and into National Oilwell-Hydralift AS on August 3, 2004.  Later in August of 2004, National Oilwell-Hydralift AS merged with and into National Oilwell Norway AS,[11] another defendant in this lawsuit.

---

[11] NOV's certificate of interested parties [Doc. No. 4].

With regard to the second issue raised by BP, while NOV initially reserved the right to challenge jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA") in its removal documents, it did not reserve the right to deny that this Court has subject matter jurisdiction over this suit.  Moreover, NOV will not challenge the existence of OCSLA jurisdiction in this suit. By removing this case to federal court, NOV has asserted that federal jurisdiction exists over this action; NOV does not and will not deny the existence of such jurisdiction unless changed circumstances destroy the jurisdiction that existed at the time of removal (as a party is always permitted to do).

**IV.    This Court Is Permitted to Temporarily Stay This Action Pending the Louisiana Court's Decision on NOV's Motion to Transfer**

In *West Gulf Maritime*, the Fifth Circuit noted that it sometimes may be appropriate for the later-filed court to temporarily stay the later-filed suit pending the determination of a motion to transfer in the first-filed suit.  *West Gulf Maritime*, 751 F.2d at 729 n.1.  The court explained:

> A stay may, for example, be appropriate to permit the court of first filing to rule on a motion to transfer. If that court transfers the first-filed action, the stay could be lifted and the actions consolidated.  If the transfer is denied, however, the stay could be lifted and the second-filed action dismissed or transferred.

*West Gulf Maritime*, 751 F.2d at 729 n.1.   Other courts have endorsed the Fifth Circuit's approach.  *E.g., Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 629 (9th Cir. 1991); *Valor Telecomm. Southwest, LLC v. Burnett*, 2007 WL 750502, *2 (N.D. Tex. March 13, 2007) (not designated for publication); *Lear Siegler Servs. v. Ensil Int'l Corp.*, 2005 WL 2645008, *3 (W.D. Tex. 2005) (not designated for publication); *Elec. & Gas Tech., Inc. v. Mazurek*, 2002 WL 1125086, *7 (N.D. Tex May 28, 2002) (not designated for publication).  Thus, if the Court is disinclined to allow this action to move forward until the Louisiana court rules on the motion to

transfer, it should grant only a temporary stay of this action until the Louisiana court grants or denies transfer of that action.

**V.      Even If the Court Is Inclined to Grant the Temporary Stay, the Parties Would Benefit from Proceeding with the Scheduling Conference, Which Is Set Before the Motion for Temporary Stay Is Set for Submission**

NOV participated in the Rule 26(f) conference between the parties prepared to discuss the matters identified in Rule, as required under the Court's order for pretrial conference. Fed. R. Civ. P. 26(f). BP's implication in its motion that NOV acted unreasonably in so complying with the rules and the Court's order is baffling, and particularly surprising coming from counsel who was not present on the conference call. Even if BP's motion to delay the pretrial conference is granted, the parties were required to confer under Rule 26(f) at the time of their conference call. NOV offered on the call to allow any discovery to be used in both the Texas and Louisiana lawsuit; BP nonetheless refused to participate in any discussion of pretrial issues.

Federal Rule of Civil Procedure 16 specifically identifies the purposes of the pretrial conference as: expediting disposition of the action, establishing early and continual control so that the case will not be protracted because of lack of management, discouraging wasteful pretrial activities, improving the quality of the trial through more thorough preparation, and facilitating settlement. Fed. R. Civ. P. 16(a)(1)-(5). Rule 16 also identifies the matters that may be considered at the pretrial conference, including formulating and simplifying the issues, obtaining admissions and stipulations, avoiding unnecessary evidence and limiting expert testimony, summary judgment issues, discovery, identifying witnesses and documents, settling the case, the pretrial order, disposing of pending motions, and facilitating in other ways the just, speedy, and inexpensive disposition of the action. Tex. R. Civ. P. 16(c)(2)(A)-(P).

These purposes for early discussion among the parties can and should be accomplished here; and, because BP's claims are identical in both its Texas and its Louisiana lawsuits against NOV, the issues addressed or resolved at the pretrial conference are issues that arise in both actions. With guidance from the Court, NOV would like to begin working with BP to: identify and simplify the issues and eliminate unnecessary issues through stipulation or otherwise, determining the extent of discovery needed and the amount of time the parties believe will be necessary to complete such discovery, and identifying potential witnesses and documents (which will further illuminate the Louisiana court's 1404(a) transfer decision). Likewise, NOV believes that both parties would benefit from discussion with the Court of the pending motions, the status of the Louisiana suit, and coordination between the two suits.

Rule 16 is designed to improve and streamline the judicial process through early communication and court involvement. These benefits are forfeited if the scheduling conference is delayed until after protracted pretrial litigation. NOV agrees with the assertion in BP's motion that it has been "candid" with NOV and the Court about its purposes for filing duplicative actions in Texas and Louisiana – BP knows that this Court is a proper venue and believes it is more likely to have personal jurisdiction over all of the defendants, but BP chose to first file its suit in Louisiana, where none of the parties or evidence are located and where BP believes there may not be personal jurisdiction over all defendants. Such forum shopping by Plaintiffs does not justify unnecessary delay of this action.

**PRAYER**

NOV requests that the Court deny Plaintiffs' motions to stay and to continue the scheduling conference. Alternatively, NOV requests that the Court stay this action only until the Louisiana court issues a ruling on NOV's motion to transfer the Louisiana action to Texas.

Respectfully submitted,

By: /s/ _____
        Melissa M. Davis

| | | |
|---|---|---|
| MAHTOOK & LAFLEUR, LLC<br>Charles A. Mouton<br>SBN 17721<br>Kay A. Theunissen<br>SBN 17448<br>P.O. Box 3089<br>600 Jefferson St.<br>Suite 1000<br>Lafayette, LA 70502<br>Tel:  (337) 266-2189<br>Fax: (337)266-2303 | J.D. Page<br>*Lead Counsel*<br>SBN 15406700<br>3155 Phoenix Tower<br>3200 Southwest Freeway<br><br>Houston, TX 77027<br>Tel: (713) 840-9200<br>Fax: (713) 840-9217 | WARE, JACKSON, LEE & CHAMBERS, LLP<br>Melissa M. Davis<br>SBN 24045756<br>2929 Allen Pkwy, Fl. 42<br>Houston, TX 77019<br>Tel: (713) 659-6400<br>Fax: (713) 659-6262 |

Counsel for National Oilwell Varco, L.P., National Oilwell Varco, Inc., National Oilwell Norway AS, Hydralift Amclyde, Inc., Hydralift, Inc., and Hydralift AS

## CERTIFICATE OF CONFERENCE

I hereby certify that on the 12th day of January, 2010, I conferred with Robert Burns, counsel for the Plaintiffs, regarding the relief sought herein, and Plaintiffs are opposed.

/s/
Melissa M. Davis

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of January, 2010, I electronically filed the foregoing document with the clerk of the court for the United States District Court, Southern District of Texas, using the electronic case filing system of the Court. The electronic case filing system will send a "Notice of Electronic Filing" to counsel of record who have consented in writing to accept this Notice as service of this document by electronic means; I further certify that I have served counsel of record who have not so consented to electronic service by certified mail, return receipt requested.

/s/
Melissa M. Davis