UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BP AMERICA PRODUCTION COMPANY, ET AL. | * * * | CIVIL ACTION NO. 09-6218 |
| VERSUS | * * | SECTION "L" |
| NATIONAL OILWELL VARCO, LP, ET AL. | * * * * | MAGISTRATE 4 |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. §1404(a)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

NOW INTO COURT, through undersigned counsel, come defendants National Oilwell Varco, L.P., Hydralift Amclyde, Inc. and Hydralift, Inc. (hereinafter "NOV") who, pursuant to 28 U.S.C. §1404(a), move this Honorable Court to transfer this case to the United States District Court for the Southern District of Texas, where a substantively identical suit is currently pending. As is set forth in the accompanying memorandum and the attached exhibits, transfer from this Court to the Southern District of Texas is proper based on the factors set forth in §1404(a), and the Southern District of Texas is the most appropriate venue for this case.

WHEREFORE, NOV prays that this Motion to Transfer Venue be granted, and that this matter be transferred to the United States District Court for the Southern District of Texas where an identical lawsuit is currently pending.

Respectfully Submitted,

By _____
        Charles A. Mouton

MAHTOOK & LAFLEUR, LLC
Charles A. Mouton
SBN 17721
Suite 1000
Lafayette, LA 70502
Tel:  (337) 266-2189
Fax: (337)266-2303

J.D. Page
SBN 15406700
3040 Post Oak Blvd.
Ste 850
Houston, TX 77056
Tel: (713) 840-9200
Fax: (713) 840-9217

LEWIS, KULLMAN, STERBCOW & ABRAMSON
Lawrence S. Kullman
SBN 07884
2614 Pan American Life Center
601 Poydras St.
New Orleans, LA 70130
Tel: (504) 588-1500
Fax: (504) 588-1514

Counsel for National Oilwell Varco, L.P., National Oilwell Varco, Inc., National Oilwell Norway AS, Hydralift Amclyde, Inc., Hydralift, Inc., and Hydralift AS

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing has this date been served on all counsel of record in this proceeding by:

( ) Hand Delivery        ( ) Prepaid U. S. Mail

( ) Facsimile             ( X ) CM/ECF System

Lafayette, Louisiana this _12th_ day of January, 2010.

CHARLES A. MOUTON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BP AMERICA PRODUCTION COMPANY, ET AL. | * * * | CIVIL ACTION NO. 09-6218 |
| VERSUS | * * | SECTION "L" |
| NATIONAL OILWELL VARCO, LP, ET AL. | * * * | MAGISTRATE 4 |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * ** * *

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. §1404(a)**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * ** * *

MAY IT PLEASE THE COURT:

Defendants National Oilwell Varco, L.P., Hydralift Amclyde, Inc. and Hydralift, Inc. (hereinafter "NOV") submit this Memorandum in Support of Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a), in which NOV asks the Court to transfer this suit to the Southern District of Texas (Houston Division), the principal location of key witnesses, documentary and physical evidence, and underlying events upon which plaintiffs' liability assertions are based.

## TABLE OF CONTENTS

Table of Contents ............................................................................................................... ii

Index of Authorities ........................................................................................................... iv

Introduction ..........................................................................................................................1

Summary of Argument .........................................................................................................1

Procedural Posture ...............................................................................................................3

    I.       Procedural Posture of BP's Louisiana Lawsuit ..........................................................3

    II.      Procedural Posture of BP's Texas Lawsuit .................................................................3

Identification of Parties ........................................................................................................4

Factual Background ..............................................................................................................6

Arguments and Legal Authority ..........................................................................................7

    I.  Legal Standards Applicable to a § 1040(a) Motion to Transfer Venue ...............................7

        A. Principles Underlying § 1404(a) Analysis ....................................................................8

        B. Factors Considered in Determining Whether to Transfer .............................................9

        C. Burden for Transfer is Lower Where, As Here, Plaintiff Does Not Reside
           In Venue of Filing ....................................................................................................9

    II. Application of Legal Standards for § 1404(a) Transfer to Facts of this Suit ....................10

        A. No Parties Reside in This District; Parties on Both Sides Reside in the
           Southern District of Texas ......................................................................................10

        B. Not Only "Might" This Suit Have Been Brought in Texas, This Suit Was
           Brought In Texas, Where It Is Also Pending .........................................................11

        C. The Private Interest Factors Strongly Favor Transfer of This Suit to the
           Southern District of Texas ......................................................................................11

           1.  Relative Ease of Access to Sources of Proof .......................................................11

                a.   The Location of Witnesses with Knowledge of the Contractual
                   Issues Warrants a Transfer to Texas ...........................................................12

b.  The Location of Witnesses with Knowledge and Evidence Concerning the Design and Construction of the Drilling Rig and Parking Brake System Warrants a Transfer to Texas ......................................13

c.  The Location of Witnesses With Knowledge of and Evidence Concerning Operation, Maintenance and Repair of the Parking Brakes Warrants a Transfer to Texas..............................................................18

d.  The Location of Witnesses with Knowledge of the Incident Investigation Warrants a Transfer to Texas.....................................................19

2.  The Availability of Compulsory Process to Secure Witnesses Warrants a Transfer to Texas................................................................................................21

3.  The Cost of Attendance for Willing Witnesses Warrants a Transfer to Texas....................................................................................................................23

4.  All Other Practical Problems that Make a Trial Easy, Expeditious and Inexpensive Warrant a Transfer to Texas ................................................................23

D.  The Public Interest Factors Favor Transfer of This Suit to the Southern District of Texas..........................................................................................................24

1.  Administrative Difficulties from Court Congestion Favor Transfer ...............24

2.  The Interest in Having Localized Interest Decided at Home Favors Transfer.............................................................................................................25

3.  The Familiarity of the Forum with the Law That Will Govern the Case Is Neutral.................................................................................................26

4.  Avoiding Unnecessary Problems of Conflicts of Laws is Neutral .................26

5.  Judicial Economy Favors Transfer ................................................................27

Conclusion ........................................................................................................................28

Prayer.................................................................................................................................29

Certificate of Service ........................................................................................................30

iii

# INDEX OF AUTHORITIES

*Cases*

Continental Grain Company v. The FBL-585,
    364 U.S. 19 (1960) ......................................................................................................26

Devaughn v. Inphonic, Inc.,
    403 F.Supp.2d 68 (D.D.C. 2005).....................................................................................8

Ekin v. Hunt,
    1993 WL 543041 (E.D. La. 1993)...................................................................................25

Fletcher v. Exxon Shipping Company,
    727 F.Supp. 1086 (E.D. Tx. 1989) .................................................................................27

General Instrument Corporation v. Mostek Corporation,
    415 F.Supp. 821 (D. Del. 1976) .....................................................................................10

Gold v. Scurlock,
    290 F.Supp. 926 (D.C.N.Y. 1968) ..................................................................................10

Gregoire v. Delmar Systems, Inc.,
    2005 WL 3541051 (E.D. La. 2005).................................................................................26

Gulf Oil Corporation v. Gilbert,
    330 U.S. 501 (1947) .........................................................................................................9

Hill's Pet Products v. A.S.U., Inc.,
    808 F.Supp. 774 (D. Kan. 1992).....................................................................................23

Houston Trial Reports, Inc. v. LRP Publications, Inc.,
    85 F.Supp.2d 663 (S.D. Tx. 1999)..................................................................................27

Humble Oil v. Bell Marine Service, Inc.,
    321 F.2d 53 (5th Cir. 1963) .............................................................................................9

I Santi, Inc. v. Great American Insurance Company of New York,
    2008 WL 4809432 (E.D. La. 2008).................................................................................25

In Re: TS Tech USA Corp.,
    551 F.3d 1315 (Fed. Cir. 2008) ........................................................................................9

In Re: Volkswagen of America, Inc.,
    545 F.3d 304 (5th Cir. 2008) ......................................................8, 9, 22, 23, 25, 26

Jacobs v. Caesars Entertainment, Inc.,
  2005 WL 2050290 (E.D. La. 2005) ............................................................................9

John Buck Company v. Atlantic Richfield Co.,
  631 F.Supp. 1527 (N.D. Ill. 1986) ..........................................................................11

Jordan v. Dixie Pump & Supply, Inc.,
  2006 WL 861022 (E.D. La. 2006) ........................................................................9, 26

Klutho v. 21st Century Ins. Co.,
  2007 WL 4224296, *2 (N.D. Ill. 2007) ...................................................................10

Laitram Corporation v. Hewlett-Packard Company,
  120 F.Supp.2d 607 (E.D. La. 2000) ........................................................................22

Marrogi v. Howard,
  2002 WL 987386, at *2 (E.D. La. 2002) .................................................................25

Marshall v. State Farm Mutual Automobile Insurance Company,
  1988 WL 125447 (E.D. La. 1988) ...........................................................................17

Monaco v. G.D. Searle & Co.,
  506 F.Supp. 965 (D.C. Ill. 1979) ............................................................................10

Montgomery v. STG Int'l, Inc.,
  532 F.Supp.2d 29 (D.D.C. 2008) .............................................................................10

Morgan v. Metropolitan Life Insurance Company,
  2003 WL 1903344 (E.D. La. 2003) .........................................................................25

Norwood v. Kirkpatrick,
  349 U.S. 29 (1955) ....................................................................................................8

Reaves v. U.S. Department of Justice,
  355 F.Supp.2d 510 (D.D.C. 2005) ...........................................................................11

Saleh v. Titan Corporation,
  361 F.Supp.2d 1152 (S.D. Cal. 2005) ......................................................................11

Siegel v. Homestore, Inc.,
  255 F.Supp.2d 451 (E.D. Pa. 2003) ...........................................................................9

Smithkline Corp. v. Sterling Drug, Inc.,
  406 F. Supp. 52 (D. Del. 1975) ..................................................................................7

Somerville v. Major Exploration, Inc.,
    576 F.Supp. 902 (S.D.N.Y. 1983) ..................................................23

Stockbridge-Munsee Community v. U.S.,
    593 F.Supp.2d 44 (D.D.C. 2009).....................................................9

Thermal Technologies, Inc. v. Dade Service Corporation,
    282 F.Supp.2d 1373 (S.D. Fla. 2003) .............................................9

United Life Insurance Company v. Butler Phillips Management Services, Inc.,
    741 F.Supp. 1244 (M.D. La. 1990) ................................................25

Van Dusen v. Barrack,
    376 U.S. 612, 84 S.Ct., 11 L.Ed.2d 945 (1964) ...........................8

**Statutes**

28 U.S.C. §1404(a) ............................................. 1, 3, 7, 8, 9, 10, 11, 22, 26, 28, 29

43 U.S.C. §1331..............................................................................3, 11

43 U.S.C. §1349(b)........................................................................3, 7, 11

Fed. R. Civ. P. 12(b) ......................................................................3, 4

Fed. R. Civ. P. 45(c) ........................................................................21

Fed. R. Evid. 2001 ...........................................................................21

## INTRODUCTION

BP America Production Company, BP Exploration & Production, Inc. and their insurer (collectively, "BP") filed this suit to recover for property damages suffered on BP's MAD DOG spar during Hurricane Ike.[1] BP's complaint states that it purchased the platform's drilling rig from Pride Offshore, Inc. ("Pride") pursuant to a Drilling Rig Construction and Purchase Contract (the "Construction Contract")[2] and that Pride subcontracted the design, manufacture and installation of the drilling rig parking brake system to NOV.[3] BP further alleges that NOV provided training and instruction to Pride regarding operation and maintenance of the system and various warranty, repair, maintenance and other work on the parking brake system.[4] BP asserts that the parking brakes on the drilling rig failed during Hurricane Ike, causing BP's property damage, and that NOV is liable on the basis of: the design of the parking brake system; the provision of training, instructions, and warnings relating to the parking brake system; express and implied warranties; and installation, maintenance and repair of the parking brake system.

In addition to this suit, BP filed an identical suit in state court in Harris County, Texas, which has been removed to federal court and is presently pending before Judge Nancy F. Atlas of the Southern District of Texas.

## SUMMARY OF ARGUMENT

A party seeking transfer under § 1404(a) must demonstrate that: (1) the plaintiff could have initiated the suit in the transferee court and (2) the considerations of convenience and the interest of justice weigh in favor of transfer. With regard to the first prong, not only could BP have brought this suit in Houston, Texas, it did; and that case remains pending in the Southern

---

[1] Exh. 1, BP's complaint [Doc. No. 1].

[2] *Id.* at ¶¶ 9-13. A copy of the Construction Contract is attached as Exhibit 2.

[3] *Id.* at ¶¶ 13-14.

[4] *Id.* at ¶¶ 18, 19.

District of Texas, Houston Division.   With regard to the second prong, the evidence overwhelmingly supports transfer of this case to the Southern District Texas -- where BP America Production Company and National Oilwell Varco, L.P. both maintain their principal offices -- as the more convenient venue for both sides of this litigation; the interest of justice factors likewise favor litigation in Texas, which has the greatest interest in the resolution of this matter.

The great majority of the events related to BP's purchase of the drilling rig and NOV's provision of the drilling rig's parking brake system occurred in Houston, Texas.  Although the alleged damage to the MAD DOG platform occurred in the Gulf of Mexico off the coast of Louisiana, the liability BP asserts in this lawsuit does not arise out of NOV's conduct during that event but on NOV's conduct in designing, manufacturing, installing and/or maintaining the parking brake system.  To the extent this conduct occurred in the United States, it occurred in and around Houston, Texas.   Essentially all of the events and activities relevant to a determination of liability in this action occurred in Houston, Texas.

Moreover, the most important factor in determining whether to transfer the case is the location of fact witnesses.  Here, the evidence demonstrates that the majority of key fact witnesses reside in Houston, Texas.  The essential non-party witnesses employed by Pride Offshore, Inc., from whom BP purchased the drilling rig, are also believed to office and reside in Houston. Another decisive factor in deciding whether to transfer is the location of the evidence, particularly physical evidence that is not easily transported.  Here, a large and cumbersome volume of records, data, physical evidence (recovered parking brakes) and equipment are located in Houston, Texas.

In sum, it is evident that the most logical and efficient venue for resolution of this litigation is Houston, Texas. And, BP did, in fact, bring this suit in Houston, Texas as well as in Louisiana. BP simply ignored the obvious connections Texas has with this case and filed its Louisiana suit first in order to impose unnecessary burden on NOV and because it views the Eastern District of Louisiana as a more favorable venue for its claims. This is exactly the situation that § 1404(a) was designed to correct by enabling federal district courts to transfer suits to a more appropriate venue.

## PROCEDURAL POSTURE

**I.      Procedural Posture of BP's Louisiana Lawsuit**

BP filed this action on September 9, 2009, asserting subject matter jurisdiction and venue under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §1331 and 43 U.S.C. §1349(b).[5] To date, National Oilwell Varco, L.P., Hydralift Amclyde, Inc. and Hydralift, Inc. have filed an answer;[6] and National Oilwell Norway AS, National Oilwell Varco, Inc., and Hydralift AS have filed Rule 12(b) Motions to Dismiss.[7] No Scheduling Order has been issued and no formal discovery has been conducted in this suit.

**II.     Procedural Posture of BP's Texas Lawsuit**

On September 10, 2009, the day after BP filed its Louisiana lawsuit, BP filed a substantively identical suit in state court in Harris County, Texas.[8] NOV removed that suit to the United States District Court for the Southern District of Texas, Houston Division, where it is presently pending.[9] National Oilwell Varco, L.P., National Oilwell Varco, Inc., National Oilwell

---

[5] *See* Exh. 1, BP's complaint [Doc. No. 1] at ¶¶ 5 & 6.

[6] [Doc. No. 4]

[7] [Doc. Nos. 5 and 6]

[8] Exh. 3, BP's Texas petition.

[9] Exh. 4, Notice of Removal in Texas suit.

Norway, AS, Hydralift Amclyde, Inc., and Hydralift, Inc. have filed answers in that suit. [10] Hydralift, AS has filed a Rule 12(b) Motion to Dismiss. [11]  No trial date has been set, nor has any discovery been conducted in the Texas action.   A pretrial scheduling conference is set for Monday, January 25, 2010. [12]

BP recently filed a motion to stay the Texas action, in which BP asserted that it prefers to pursue the litigation in Louisiana, but wishes to keep the Texas suit on file because of the risk that Louisiana courts do not have jurisdiction over all defendants. [13]

## IDENTIFICATION OF PARTIES

BP America Production Company and BP Exploration & Production Inc. are Delaware corporations.  The principal place of business of BP America Production Company is Houston, Texas; the principal place of business of BP Exploration & Production Inc. is in Warrenfield, Illinois. [14]  According to BP's webpage, BP has nearly 6,000 employees in the Southern District of Texas (4,000 in Houston and another 2,000 in Texas City), but no offices in the Eastern District of Louisiana. [15]

American Home Assurance Company is a New York insurance corporation authorized to do and doing business in both Louisiana and Texas. [16]

National Oilwell Varco, L.P. is a Delaware limited partnership with its principal place of

---

[10] Exh. 5, National Oilwell Varco, L.P., Hydralift Amclyde, Inc., and Hydralift, Inc.'s answer in Texas suit; Exh. 6, National Oilwell Varco, Inc. and National Oilwell Norway, AS's answer in Texas suit.

[11] Exh. 7, Hydralift, AS's motion to dismiss in Texas suit.

[12] Exh. 8, Southern District of Texas Court's order for initial pretrial and scheduling conference.

[13] Exh. 9, BP's motion to stay and supporting memorandum of law in Texas suit.

[14] Exhs. 10 & 11, Louisiana Secretary of State information for BP America Production Company and BP Exploration & Production Inc.

[15] Exh. 17, BP's webpage.

[16] Exh. 1, BP's complaint at ¶ 2.

4

business in Houston, Harris County, Texas.[17]   National Oilwell Varco, Inc. is a Delaware corporation.[18]   National Oilwell Norway AS is a Norwegian corporation and a non-resident of Louisiana.[19]

Hydralift Amclyde, Inc. is a Delaware corporation with its principal place of business in St. Paul, Minnesota.[20]   Hydralift Amclyde, Inc. is a wholly owned subsidiary of NOV.   The evidence will show that Hydralift Amclyde, Inc. had no involvement in the sale or manufacture of the parking brake system.   Effective October 31, 2003, Hydralift, Inc. transferred all of its assets and liabilities to National-Oilwell, L.P.   Effective November 1, 2003, Hydralift, Inc. merged with National-Oilwell, Inc., with National-Oilwell, Inc. becoming the surviving corporation. After a merger with Varco in 2005, National-Oilwell, L.P. became National Oilwell Varco, L.P., and National-Oilwell, Inc. became National Oilwell Varco, Inc.[21]

Pride is a critical non-party that designed and constructed the drilling rig pursuant to BP's criteria and specifications.[22]   According to the Louisiana Secretary of State, Pride Offshore, Inc. is a Delaware corporation with its principal business office in Houston, Texas.[23]

---

[17] Exh. 3, BP's Texas petition at ¶ 4.

[18] *Id.* at ¶ 5.

[19] *See generally* motion to dismiss National Oilwell Norway AS and supporting memorandum [Doc Nos. 5, 5(2)].

[20] Exh. 12, NOV's certificate of interested parties in Texas suit.

[21] *Id.*

[22] Exh. 1, BP's complaint [Doc. No. 1] at ¶¶ 12-13.

[23] Exh. 13, Louisiana Secretary of State information for Pride.

## FACTUAL BACKGROUND

On March 15, 2002, BP and Pride entered into the Construction Contract with respect to the drilling rig package to be situated upon the MAD DOG Spar platform, which was ultimately to be installed and operated at Green Canyon Block 782 in the Gulf of Mexico.[24]  This contract was executed in Houston, Texas.   Representatives in Pride's Houston office thereafter subcontracted Hydralift, Inc. to provide various equipment, including the skidding system for the rig and, later, the parking brakes for the Derrick Equipment Set ("DES").  The parking brakes were manufactured in Kristiansand, Norway by a foreign Hydralift entity and shipped to Houston, where they were later installed on the MAD DOG DES at a shipyard in Port Arthur, Texas.[25]  Upon information and belief, BP provisionally accepted the drilling rig from Pride on September 24, 2004.

Approximately four years after BP accepted the drilling rig from Pride and operated the platform, Hurricane Gustav entered the Gulf of Mexico, causing the evacuation of the MAD DOG Spar on August 30, 2008.  After Hurricane Gustav, the platform was re-manned and then evacuated again on September 8, 2008 due to Hurricane Ike.  However, presumably with the concurrence of BP's representative, the Pride rig crew did not re-energize the parking brakes for the rig before evacuating.

BP asserts that it suffered significant damage during Hurricane Ike due to the failure of the parking brake system on the drilling rig.  BP's investigation of the incident has concluded that: (1) only seven of the eight parking brakes on the east-west rig skid beam were used by Pride to secure the DES to the MAD DOG Spar and (2) the maximum measured significant wave height in Hurricane Ike exceeded the 100 year design criteria used in the design of the MAD

---

[24] Exh. 1, BP's complaint [Doc. No. 1].

[25] Exh. 14, Affidavit of Svein Stubstad.

DOG Spar and parking brakes. A series of two waves measuring seventy-four feet and eighty-eight feet respectively impacted the platform immediately prior to the DES sliding off the east-west skid rig beams and into the gulf.

BP has filed this litigation and the Texas litigation to recover for the damages to the MAD DOG Spar incurred during Hurricane Ike. BP is believed to have instituted a separate arbitration against Pride in Houston, the mandatory location for such arbitration under the contracts between BP and Pride.

The attached Affidavit of Svein Stubstad establishes that: (1) the vast majority of the witnesses, documents and physical evidence pertaining to the procurement, design, manufacture, sale, delivery, installation and modification of the parking brakes for the MAD DOG Spar and DES exist in Texas; (2) the incident investigation conducted by BP's retained expert Stress Engineering occurred in Texas; and (3) all parties and critical non-parties have a principal place of business in Texas. Despite this overwhelming connection to Texas, BP has chosen the Eastern District of Louisiana as the venue to litigate this dispute. The only factor tying this suit to the Eastern District of Louisiana is the fact that the MAD DOG Spar was located approximately 170 miles south of New Orleans.

## ARGUMENTS AND LEGAL AUTHORITY

**I.      Legal Standards Applicable to a § 1040(a) Motion to Transfer Venue**

According to 28 U.S.C. §1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. §1404(a). OCSLA contains its own specific venue provisions. 43 U.S.C.A. § 1349(b)(1). Notwithstanding these provisions, § 1404 was intended "to be generally applicable to all civil actions whether governed by general or special venue provisions and whether the special venue provisions were contained in Title 28 or

other titles of the Code." Smithkline Corp. v. Sterling Drug, Inc., 406 F. Supp. 52 (D. Del. 1975). Thus, the transfer requested here is not impeded by any applicability of OCSLA.

A defendant seeking a transfer of venue pursuant to §1404(a) must generally make two showings: first, the defendant must establish that the plaintiff originally could have brought the action in the proposed transferee district; and second, that considerations of convenience and the interest of justice weigh in favor of transfer. Devaughn v. Inphonic, Inc., 403 F.Supp.2d 68 (D.D.C. 2005).

### A.    Principles Underlying § 1404(a) Analysis

The purpose of §1404(a) is to prevent waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense. Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct., 11 L.Ed.2d 945 (1964).

The underlying premise of §1404(a) is that Courts should prevent plaintiffs from abusing their privilege under 28 U.S.C. §1391 by subjecting defendants to venues that are inconvenient. See In Re: Volkswagen of America, Inc., 545 F.3d 304, 313 (5th Cir. 2008)(en banc) ("Volkswagen II") (citing Norwood v. Kirkpatrick, 349 U.S. 29 (1955)).  The party seeking transfer bears the burden of showing "good cause", which is satisfied "when the movant demonstrates that the transferee venue is clearly more convenient" for the parties and witnesses than the venue chosen by plaintiff. Id. at 314.  District Courts have broad discretion in deciding whether to order a transfer, but a transfer should be granted upon a showing of good cause. Id. at 314, 315.

Courts must bear in mind that Congress intended to permit transfers "upon a lesser showing of inconvenience" than is required under the common law doctrine of forum *non conveniens*. In Re: Volkswagen, 545 F.3d at 313-314 [citing Norwood v. Kirkpatrick, 349 US

29, 32, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)]. The Fifth Circuit has specifically noted that the "heavy burden traditionally imposed upon defendants by the forum *non conveniens* doctrine . . . was dropped in the §1404(a) context." In Re: Volkswagen, 545 F.3d at 314.

### B.     Factors Considered in Determining Whether to Transfer

The Fifth Circuit has adopted the private and public interest factors first enunciated in Gulf Oil Corporation v. Gilbert, 330 U.S. 501 (1947), for determining whether a §1404(a) transfer is supported by the convenience of parties and witnesses and in the interest of justice. Volkswagen II, 545 F.3d at 315 (citing Humble Oil v. Bell Marine Service, Inc., 321 F.2d 53, 56 (5th Cir. 1963); see In Re: TS Tech USA Corp., 551 F.3d 1315 (Fed. Cir. 2008) (applying Fifth Circuit precedent).

The "private" interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive. Volkswagen II, 545 F.3d at 315. The "public" interest factors to be considered are: (1) the administrative difficulties flowing from Court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; (4) the avoidance of unnecessary problems of conflicts of law [or in] the application of foreign law; and (5) judicial economy. Id.; Jordan v. Dixie Pump & Supply, Inc., 2006 WL 861022 (E.D. La. 2006).

### C.     Burden for Transfer Is Lower Where, As Here, Plaintiff Does Not Reside in Venue of Filing

Your Honor has recognized that under §1404(a), circumstances clearly pointing to a more convenient venue will outweigh the plaintiff's choice of a home venue. Jacobs v. Caesars Entertainment, Inc., 2005 WL 2050290 (E.D. La. 2005). The burden of demonstrating a more

convenient venue is even lighter where, as is the case here, the selected venue is not the plaintiff's home venue. Stockbridge-Munsee Community v. U.S., 593 F.Supp.2d 44 (D.D.C. 2009); Thermal Technologies, Inc. v. Dade Service Corporation, 282 F.Supp.2d 1373 (S.D. Fla. 2003); and Siegel v. Homestore, Inc., 255 F.Supp.2d 451 (E.D. Pa. 2003) (where the plaintiff chooses a forum which is not his home, his choice should be given considerably less weight). Specifically, where plaintiff has not brought suit on its "home forum", the convenience to plaintiff is not as great as it would be were plaintiff litigating at or near its principal place of business and thus, it is easier for defendant to meet its burden in such situations. General Instrument Corporation v. Mostek Corporation, 415 F.Supp. 821 (D. Del. 1976).

II.   **Application of Legal Standards for § 1404(a) Transfer to Facts of this Suit**

   A.   **No Parties Reside in This District; Parties on Both Sides Reside in the Southern District of Texas**

   None of the parties to this lawsuit reside in the Eastern District of Louisiana, whereas parties on both sides of the lawsuit reside in the Southern District of Texas.  Specifically, Plaintiff BP America Production Company's principal place of business is in Houston, Texas.[26] Defendant National Oilwell Varco, L.P. likewise has its principal place of business in Houston, Texas.[27]  Under these circumstances, the plaintiffs' choice of venue is entitled to no more than "minimal" deference. Klutho v. 21st Century Ins. Co., 2007 WL 4224296, *2 (N.D. Ill. 2007); *see also* Montgomery v. STG Int'l, Inc., 532 F.Supp.2d 29, 33 (D.D.C. 2008) (holding that transfer was warranted where plaintiff and defendant resided in transferee district and plaintiff's claims primarily, though not exclusively, stemmed from conduct in transferee district); Monaco v. G.D. Searle & Co., 506 F.Supp. 965, 969 (D.C. Ill. 1979) ("Here, not only do the plaintiffs

---

[26] Exh. 10, Louisiana Secretary of State information for BP America Production Company.

[27] Exh. 3, BP's Texas petition at ¶ 4.

reside in the transferee forum, but so do many witnesses who will be crucial to both parties."); Gold v. Scurlock, 290 F.Supp. 926, 929 (D.C.N.Y. 1968) ("Moreover, even the desideratum of permitting the plaintiff to sue at her own domicile is absent in this case because plaintiff is a resident of the transferee district.")

**B.      Not Only "Might" This Suit Have Been Brought in Texas, This Suit Was Brought in Texas, Where It Is Also Pending**

Section 1404(a) states a case may be transferred to a judicial district where the lawsuit "might have been brought". 28 U.S.C. §1404(a). In this case jurisdiction is based on the Outer Continental Shelf Lands Act. 43 U.S.C. 1331. Venue for such actions is proper "in the judicial district in which any defendant resides or may be found, or in the judicial district of the State nearest the place where the cause of action arose." 43 U.S.C. 1349(b)(1). Defendant, National Oilwell Varco, L.P., has its principal place of business in Houston, Texas which is within the Southern District of Texas. Thus, venue is proper in Houston, Texas. In fact, as noted above, BP has filed an identical lawsuit in Houston, which is currently pending in the Southern District of Texas. The first requirement of Section 1404(a) has therefore been satisfied.

**C.      The Private Interest Factors Strongly Favor Transfer of This Suit to the Southern District of Texas**

**1.      Relative Ease of Access to Sources of Proof**

The first private interest factor is "the relative ease of access to sources of proof." 545 F.3d at 315. This factor includes access to witnesses as well as documentary or physical evidence. Saleh v. Titan Corporation, 361 F.Supp.2d 1152 (S.D. Cal. 2005), and Reaves v. U.S. Department of Justice, 355 F.Supp.2d 510 (D.D.C. 2005). When considering the "convenience of the witnesses" factor in ruling on a § 1404(a) motion to transfer venue, relevant considerations including the number of non-party witnesses, the location of all witnesses, the preference of

11

courts for live testimony as opposed to depositions, and other issues concerning the relative ease of access to sources of proof. The Court must consider not only the number of witnesses in the transferee or transferor districts, but the nature and quality of their testimony. John Buck Company v. Atlantic Richfield Co., 631 F.Supp. 1527 (N.D. Ill. 1986).

While this litigation is in its early stages, based upon BP's pleading, the NOV defendants are able to identify the primary issues that will be resolved during the course of the case. Identification of the key witnesses and evidence that may be relevant to the resolution of these issues points strongly to a transfer of this case to the Southern District of Texas where the vast majority of the key witnesses and documentary and physical evidence exist.

        **a.**    **The Location of Witnesses with Knowledge of the Contractual Issues Warrants a Transfer to Texas**

Many of the obligations upon which BP's claims rest stem from the original BP/Pride Construction Contract referenced in BP's complaint. That contract references BP America Production Company's office in Houston, Texas, as well as Pride International Services, Inc.'s Houston office. The signatories to the contract, Bruce Luberski for BP and James W. Allen, president of Pride Offshore, Inc., are believed to be residents of the State of Texas. Accordingly, the contractual undertakings of Pride in the design and construction of the DES will involve key witnesses in Houston, not New Orleans.

None of the key witnesses employed with NOV and/or Pride who were involved in the quotation, purchase order negotiation, design specification, or sale of the parking brakes reside in Louisiana. All are believed to work or have worked and to reside or have resided in or near Houston, Texas.[28]

In addition to the key witnesses of BP, Pride and NOV whose testimony may be relevant

---

[28] Exh. 14, Affidavit of Svein Stubstad.

to the contractual obligations of the parties with respect to the construction of the DES and sale of the parking brakes, the BP/Pride Construction Contract requires BP to defend, indemnify and provide insurance coverage to NOV and its affiliates as a "subcontractor" or "vendor" of Pride. The Drilling Rig Operation and Maintenance Services Contract (the "Operation Contract") between BP and Pride likewise requires BP to defend, indemnify and provide insurance coverage to NOV.[29]   NOV has tendered its defense of the lawsuits in Louisiana and Texas to BP and its insurers and requested indemnification and insurance coverage for the claims asserted in both of BP's actions, pursuant to these contracts.   To the extent those issues must be litigated, the key witnesses and documents necessary to prove these claims exist in Houston, where the principal offices of BP, Pride and NOV are located.

> **b.    The Location of Witnesses with Knowledge and Evidence Concerning the Design and Construction of the Drilling Rig and Parking Brake System Warrants a Transfer to Texas**

The thrust of BP's claims against NOV arise out of the alleged inadequate design and construction of the parking brake for use on the MAD DOG platform.   While NOV has not had access to any documentation from BP to identify the BP employees involved in the design of the drilling rig and incorporation of the parking brakes into the DES, Exhibit A to the Construction Contract outlines the scope of work and BP's involvement in the project, including, but not limited to BP's requirement that the work comply with BP's "specifications, drawings, and documentation described in the contract or otherwise furnished by Company".[30]   In Section 2.3 of the Construction Contract, Pride provided structural drawings with designated tie-down and hard points for incorporation with BP's overall structural drawings.[31]   BP was to provide a

---

[29] Exh. 15, Operation Contract.

[30] Exh. 2, Construction Contract at Exhibit A – Scope of Work, § 2.1.

[31] *Id.* at § 2.3

verifying agent for any Coast Guard, API or MMS certifications[32] and a warranty surveyor.[33] BP was obligated to participate in Pride's detailed design efforts of the contract and was to appoint a representative to be included in Pride's design team.[34]  BP was also to provide input into Pride's design, engineering and procurement efforts to ensure the suitability of the design of the rig and operation.[35]  Upon information and belief, most if not all of the BP and Pride design engineers known to NOV are located in Houston.[36]

NOV Witnesses.  From the standpoint of key witnesses associated with the parking brakes, the people who worked with NOV who are most likely to possess information concerning the sale, design and delivery of the parking brakes are as follows:

| | |
|---|---|
| Greg Norwood - | Houston, Texas |
| Svein Stubstad - | Houston, Texas |
| Rolf Gullaksen - | Houston, Texas |
| Tom Yost - | Houston, Texas |
| Shawn Murphy - | Houston, Texas |
| Frode Jensen - | Kristiansand, Norway |
| Eddie Preston - | Leeds, U.K. |
| Keith Jones - | Leeds, U.K. |
| Kirsti Krauss - | Kristiansand, Norway |
| Glen Saebo - | Kristiansand, Norway |
| Halvard Aas - | Kristiansand, Norway |

---

[32] *Id.* at § 2.4.

[33] *Id.* at § 2.5.

[34] *Id.* at § 3.1.5.

[35] *Id.* at § 3.1.5.

[36] Exh. 14, Affidavit of Svein Stubstad.

14

Arild Abelsnes -          Kristiansand, Norway

Odd Einar Eiksa -        Kristiansand, Norway

While other individuals in either NOV's Houston office or Norway may have had some limited involvement in the design and manufacture of the parking brakes, all of these individuals reside and work outside the State of Louisiana.[37]

Pride Witnesses.  In identifying key Pride witnesses involved in the design, manufacture and sale of the parking brakes, NOV has identified the following witnesses whose testimony may be relevant or who may possess information concerning this issue:

Trevor Smith -           former employee, now employed with Jacob Management,
                         Inc., 1500 South Dairy Ashford, Suite 400
                         Houston, Texas

Craig Metcalf -          Project Manager
                         Officed in Sugarland (near Houston, Texas)

Phillip Zhang -          Design Engineer
                         Officed in Sugarland (near Houston, Texas)

Thomas Duhen -           former Head of Engineering
                         Officed in Texas

James W. Allen –         President
                         Officed in Texas

Ed Norwood -             former employee and now BP Consultant, Rig Engineer
                         Houston, Texas

Dan Kline -              Operations Manager
                         Houston, Texas

BP Witnesses.  Because discovery is in its early stages, it is difficult to identify the key BP witnesses who were involved in the design and construction of the MAD DOG rig and derrick equipment set.  However, from the BP Investigation Report, the following individuals are

---

[37] Exh. 14, Affidavit of Svein Stubstad.

considered to be key witnesses:

| | |
|---|---|
| Kevin Kennelly - | Projects and Engineering Director, Gulf of Mexico<br>Houston, Texas |
| Gavin Kidd - | MAD DOG current Wells Team Leader<br>Houston, Texas |
| Jeff Hohle - | MAD DOG Asset Manager |
| Tom von Aschwege - | Floating Systems Technical Authority |
| Jim Burk - | Material and Corrosion Advisor |
| Matt Daniels - | MAD DOG Drilling Engineer, supporting rig delivery team |
| John Guide - | MAD DOG Pride Rig Delivery Manager and Superintendent |
| Perry Hill - | MAD DOG Wells Delivery Manager |
| Rick Macon - | MAD DOG Project General Manager |
| John Sistrunk - | MAD DOG Well Site Leader |
| Zack Smith - | MAD DOG Offshore Installation Manager |
| Pierre Beynet - | Riser, Moorings and Floating Systems Engineer |
| Ed Bracken - | Chief Meteorologist |
| Greg Sonnier - | MAD DOG OIM |

Stress Engineering Witnesses.  With respect to key third-party witnesses, BP has retained Stress Engineering Services, Inc. ("Stress Engineering") to conduct an investigation into the loss of the Derrick Equipment Set from the MAD DOG spar on September 11, 2008 and to analyze the design of the parking brakes.  Stress Engineering's office is located in Houston, Texas. Although NOV does not yet have access to information about many Stress Engineering witnesses, one Stress employee who will likely be a fact witness is:

George R. Ross -          Principal
                         Houston, Texas

Mustang Witnesses.  Additionally, based on the Construction Contract, BP employed an outside engineering firm, Mustang Engineering, Inc. ("Mustang") in Houston, Texas to receive invoices from Pride.[38]  Mustang is also believed to be involved in the design and installation of the DES.

The convenience of witnesses is the most important factor in deciding a Motion to Transfer.  Marshall v. State Farm Mutual Automobile Insurance Company, 1988 WL 125447 (E.D. La. 1988).  With respect to the design, sale and manufacture of the parking brakes, the majority of the critical witnesses in fact reside in Texas, with the remainder of the witnesses residing in Norway.  It is difficult to envision any argument from BP that New Orleans would be a more convenient venue than the Southern District of Texas, Houston Division with the lion's share of the witnesses in Texas, and none residing in Louisiana.

All or virtually all of the documentary evidence that exists concerning the design and construction of the MAD DOG Derrick Equipment Set is believed to be located in the offices of Pride, BP or NOV in Houston.  BP's principal place of business, according to the Secretary of State, is in Houston,[39] as is Pride's.[40]  National Oilwell Varco, L.P. and its affiliated entities have their principal place of business in Houston.[41]  In order to marshal all of the documentary evidence necessary to present this case to a jury, it will be necessary that the parties transport all of these persons and materials to New Orleans, along with the recovered parking brakes.  BP's expert, Stress Engineering, has accumulated substantial evidence in its Houston office in

---

[38] Exh. 16, Secretary of State information for Mustang Engineering.

[39] Exh. 10, Louisiana Secretary of State information for BP America Production Company.

[40] Exh. 13, Louisiana Secretary of State information for Pride.

[41] Exh. 3, BP's Texas petition at ¶ 4.

connection with its investigation of the claim. Therefore, the relative ease of access to sources of proof weighs heavily in favor of a transfer of this case to the Southern District of Texas.

        **c.**    **The Location of Witnesses With Knowledge of and Evidence Concerning Operation, Maintenance and Repair of the Parking Brakes Warrants a Transfer to Texas**

      <u>NOV Witnesses</u>. BP contends in its complaint that NOV is liable for failure to warn or alert BP as to the consequences of BP's operation of the parking brake system with less than all of the parking brakes in service, failing to provide adequate training, negligent maintenance and faulty installation of the parking brakes.[42] The key witnesses who worked with NOV identified to date who may provide evidence concerning these issues include the witnesses identified in the previous section of this memorandum and the following:

| | |
|---|---|
| Shawn Firenza - | Houston, Texas |
| Joey Begnaud - | Houston, Texas |
| Roger Kjoniksen - | Kristiansand, Norway |

      <u>Pride Witnesses</u>. The Pride individuals most knowledgeable concerning maintenance and operation of the MAD DOG rig are believed to include the following:

| | |
|---|---|
| Don Kline - | Operations Manager<br>Houston, Texas |
| Ray Keenan – | Maintenance<br>Houston, Texas |
| Harold Callais - | PM Manager<br>Houston, Texas |
| Steve Coleman - | PM Coordinator |
| Vincent Nicolini - | Maintenance<br>Houston, Texas |

---

[42] Exh. 1, BP's complaint [Doc. No. 1].

18

Based upon information gathered, NOV understands the operations office for BP that was primarily responsible for the MAD DOG is located in the Houston area. Therefore, BP employees who may be called as witnesses concerning the maintenance and operation of the drilling rig are believed to be residents of Texas, and not Louisiana. Many of those BP witnesses are identified by name in the section below.

> **d.    The Location of Witnesses with Knowledge of the Incident Investigation Warrants a Transfer to Texas**

BP Witnesses. The incident investigation report completed by BP following the incident consisted of team members comprised of BP's technical and engineering departments, most of whom are believed to reside in or work out of BP's office in Houston, Texas. These include the following potentially key witnesses:

| | |
|---|---|
| Bob Naeger - | Engineering Authority GoM Subsea Products (Investigation Team Leader) |
| Jonathan Gulick - | D&C DDIII Program Leader<br>Houston, Texas |
| Neil Cramond - | Marine Authority GoM<br>Houston, Texas |
| Tammer Botros - | Floating Systems Engineer GoM<br>Houston, Texas |
| Doug Schonacher - | HSE Root Cause Specialist |
| Pat O'Connor - | Segment Engineering Technical Authority - Structures |

Witnesses in BP Investigation. The work of the investigation team included interviews with many witnesses, many of whom are believed to reside in and/or work out of either Pride, BP, or NOV's offices in Houston, including the following:

| | |
|---|---|
| Tom von Aschwege - | BP Floating Systems Technical Authority |

| | |
|---|---|
| Autrey Boudreaux - | Pride Rig Toolpusher |
| Matt Daniels - | BP MAD DOG Drilling Engineer |
| Mark Dischinger - | Pride Rig Assistant Driller |
| John Guide - | BP MAD DOG Pride Rig Delivery Manager and Superintendent |
| Kevin Higginbotham - | Pride MAD DOG Rig Superintendent |
| Perry Hill - | BP MAD DOG Wells Delivery Manager |
| Gavin Kidd - | BP MAD DOG current Wells Team Leader Houston, Texas |
| Dan Kline - | Pride Operations Manager Houston, Texas |
| Rick Macon - | BP MAD DOG Project General Manager |
| Ed Norwood - | BP Consultant, Rig Engineer Houston, Texas |
| Grady Pittman - | Pride Rig Toolpusher |
| John Sistrunk - | BP MAD DOG Well Site Leader |
| Zack Smith - | BP MAD DOG Offshore Installation Manager |
| Robert Ward - | Pride Rig Superintendent |
| Pierre Beynet - | BP Riser, Moorings and Floating Systems Engineer |
| Ed Bracken - | BP Chief Meteorologist |
| Harold Calais - | Pride PM Manager Houston, Texas |
| Steve Coleman - | Pride Rig PM Coordinator |
| Shawn Firenza - | NOV Product Manager Houston, Texas |

20

Greg Sonnier -                    BP MAD DOG OIM

It is believed that most of the individuals listed above who participated in or were interviewed during the course of the investigation of the incident reside or work in Texas.

NOV does not expect to have to call all of the witnesses listed herein to testify at trial, but does expect that there will be a relatively large number of witnesses. But this list of potential witnesses demonstrates that the great majority of potential witnesses are located in the Southern District of Texas. The large number of witnesses who may be called to testify at trial further supports transfer of this case to the Southern District because the number of witnesses who will be imposed upon to travel to Louisiana if transfer is not granted is significant.

> **2.     The Availability of Compulsory Process to Secure Witnesses Warrants a Transfer to Texas**

Because the nexus of the action is in Houston, Texas, securing compulsory process of key witnesses for hearings or a trial in Louisiana may be impossible. The federal subpoena power to compel the attendance of witnesses is limited. Federal Rule of Civil Procedure 45(c) provides that a federal subpoena may only reach within the district of the issuing court, within 100 miles of the place specified for the deposition, production, or hearing, or within the state in which the Court is located if so permitted by state law. Pursuant to Federal Rule of Evidence 2001, this Court should take judicial notice that New Orleans, Louisiana is 349 miles from Houston, Texas. NOV will not be able to compel the attendance of current or former employees of Pride, other third-party witnesses or, more importantly, former employees of NOV and BP who reside in the Houston area to attend a trial or hearings in Louisiana. These employees may have critical information insofar as it relates to the claims at issue.

Based upon the identification of key witnesses above, the vast majority of significant

21

non-party witnesses, including Pride employees and BP experts, do not reside within the subpoena power of this Court. Most of the witnesses who reside in the United States are, however, within the subpoena power of the Southern District of Texas.

In contrast, the only connection of this litigation to Louisiana is that the MAD DOG platform was located adjacent to the Eastern District of Louisiana. However, NOV submits that this is not a material issue in the subject case. The drilling rig at issue has been lost in the Gulf of Mexico. This is not a situation where the jurors would ever be transported offshore to view the site of the incident. To the extent that the layout or configuration of the platform would be relevant, the method of presenting this to the jurors would be via photographs, videos or other similar evidence, which would be the same whether the case was pending in the Eastern District of Louisiana or Southern District of Texas. On the other hand, the recovered parking brakes were taken by BP to Houston to be examined and tested at Stress Engineering. For the jurors to view the parking brakes that are involved, a short drive from the Southern District of Texas courthouse is all that is necessary. As such, the fact that the Eastern District of Louisiana is "adjacent" to the site of the subject accident is not a meaningful consideration in a transfer of venue analysis.

The fact that witnesses may be deposed prior to trial misses the point. See Laitram Corporation v. Hewlett-Packard Company, 120 F.Supp.2d 607, 609 (E.D. La. 2000)(finding deposition testimony to be unhelpful and that substantial injustice would result if defendant were unable to present live testimony).

### 3. The Cost of Attendance for Willing Witnesses Warrants a Transfer to Texas

As noted above, those key employees of BP and NOV who will be called to testify concerning the design, sale and manufacture of the parking brakes live and work in Texas or

Norway.  In contrast, none of the key witnesses involved in the design or manufacture of the parking brake live or work in Louisiana.

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  Volkswagen II, 545 F.3d at 317.  According to the Court, it is an obvious conclusion that it is more convenient for witnesses to testify at home and that additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time that these fact witnesses must be away from their regular employment.  Witnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family and community.  Id.

### 4.   All Other Practical Problems that Make a Trial Easy, Expeditious and Inexpensive Warrant a Transfer to Texas

The existence of related litigation in the transferee district is a strong factor to be weighed in the interest of judicial economy on a motion to transfer to that district.  Somerville v. Major Exploration, Inc., 576 F.Supp. 902 (S.D.N.Y. 1983); Hill's Pet Products v. A.S.U., Inc., 808 F.Supp. 774 (D. Kan. 1992).  BP filed an identical lawsuit in state court in Houston which was properly removed to the Southern District of Texas, where it remains pending.

23

**D.     The Public Interest Factors Favor Transfer of This Suit to the Southern District of Texas**

**1.     Administrative Difficulties from Court Congestion Favor Transfer**

The Federal Court Management Statistics for District Courts[43] demonstrate that the Eastern District suffers a heavier burden in its case load and case back log than does the Southern District of Texas, such that the case could be resolved more quickly if litigated there. NOV further submits that the burden imposed on the Eastern District's docket resulting from Katrina-related cases, and more recently the Chinese Drywall multi-district litigation assigned to this division of the Court, likewise favors transfer.

In 2008, the most recent year for which the Federal Case Management Statistics are currently available, although there were more case filings in the Southern District of Texas than in the Eastern District, the weighted filings – i.e., the value assigned to the filings by the federal courts based on the amount of time it generally takes to resolve a case of that filing's nature and complexity –are much higher in the Eastern District.[44]   Thus, the cases filed in the Eastern District are more burdensome on the whole than the greater number of cases filed in the Southern District of Texas.   The weighted filings in Eastern District for 2008 were 852 per judge, compared to 548 per judge in the Southern District of Texas.

Additionally, the burden imposed on the Eastern District by the Katrina-related cases, discussed above, has left the Eastern District with a significantly greater backlog of cases than the Southern District of Texas.   At the end of 2008, the Eastern District had 15,654 cases pending, while the Southern District of Texas had only 8,831.[45]   Similarly, the Eastern District

---

[43] Available at www.uscourts.gov.   NOV requests that the Court take judicial notice of these public statistical records maintained by the federal courts.   Attached as Exhibit 12, for the Court's convenience, is the Federal Case Management Statistics data for 2008.

[44] *Id.*

[45] *Id.*

has more than 18 times the number of cases that have been pending for more than three years.[46]

As a result of these burdens and the complexity of so many of the filings in the Eastern District over recent years, in 2008, the median amount of time from filing to disposition for a civil suit pending in the Eastern District is 8.8 months, nearly three months longer than the median in the Southern District of Texas.[47]

On the whole, this factor strongly favors transfer of this action to the Southern District of Texas.

### 2. The Interest in Having Localized Interest Decided at Home Favors Transfer

The local interest in having this dispute decided at home weighs in favor of Texas, where the majority of the operative facts giving rise to this dispute occurred, where the majority of the work occurred and where the majority of the personnel and records are located.  In Volkswagen II, the Fifth Circuit held that local interest weighed in favor of transfer when all the events, many of the witnesses and much of the evidence were in the transferee division.  See 545 F.3d at 317-318.  Similarly, here, the vast majority of the events, witnesses and evidence can be found in the Southern District of Texas and certainly more than in the Eastern District of Louisiana.  In fact, NOV cannot identify a single event which occurred within the geographical boundaries of the Eastern District.

As with the residents of the transferee division in Volkswagen II, the residents of the Southern District of Texas (at the very least, those that work for NOV in Texas) have an interest and are directly or indirectly affected by the outcome of the litigation.  See Marrogi v. Howard, 2002 WL 987386, at *2 (E.D. La. 2002) (Transferring to Florida because "actual conduct took

---

[46] Id.

[47] Id.

25

place in Florida"); see also <u>Morgan v. Metropolitan Life Insurance Company</u>, 2003 WL 1903344 (E.D. La. 2003) (Transferring case to New York where claim related to conduct of New York corporation and the "actions of its employees in both New York and Brazil").

### 3. The Familiarity of the Forum with the Law That Will Govern the Case Is Neutral

Even if Louisiana law does apply to this incident, that fact alone should not bar transfer. <u>Ekin v. Hunt</u>, 1993 WL 543041 at *1 (E.D. La. 1993); <u>United Life Insurance Company v. Butler Phillips Management Services, Inc.</u>, 741 F.Supp. 1244, 1246 (M.D. La. 1990) ("[T]he fact that Louisiana law governs the agreement...does not pose an obstacle to transfer."). In <u>Ekin</u>, the Court noted "regardless of what state's law applies, this is a simple contract action that does not involve issues of such weight and complexity as to require that it be heard in a specific court." 1993 WL 543041 at *1. See also, <u>1 Santi, Inc. v. Great American Insurance Company of New York</u>, 2008 WL 4809432 at *5 (E.D. La. 2008) (Denying transfer of case stating "even if Texas law applies, defendant has not shown that Texas contract law is so different from the laws of other jurisdictions that this court would struggle to apply it.").

To the extent that BP has brought state law claims that may be governed by Louisiana law, the applicable legal issues and standards are easily determined and applied by out-of-jurisdiction courts because of Louisiana's statute-based approach to state law. More importantly, the indemnity and insurance issues stem from contracts between BP and Pride that were formed in Texas, where the transferee court sits. Accordingly, this factor can be considered neutral in the transfer analysis and certainly would not prohibit a transfer to Texas.

### 4. Avoiding Unnecessary Problems of Conflicts of Laws Is Neutral

NOV is not aware of any potential unnecessary conflict of law issues that counsel in favor of either Louisiana or Texas. This factor is neutral. 545 F.3d at 317 (Granting transfer

despite no discussion of first or second public factors).

     **5.**    **Judicial Economy Favors Transfer**

Regarding the public interest factors, "[c]ourts also consider judicial economy – that is whether a transfer would avoid duplicative litigation and prevent waste of time and money." Jordan v. Dixie Pump and Supply, Inc., 2006 WL 861022 at *1 (E.D. La. 2006); see also, Gregoire v. Delmar Systems, Inc., 2005 WL 3541051 at *1 (E.D. La. 2005) ("As an additional public interest factor, courts consider judicial economy - that is, whether a transfer would avoid duplicative litigation and prevent waste of time and money"). As the United States Supreme Court has stated, "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different district courts leads to the wastefulness of time, energy and money that §1404(a) was designed to prevent. Continental Grain Company v. The FBL-585, 364 U.S. 19, 26 (1960). In deciding whether a motion to transfer under § 1404(a) should be granted, "Conservation of judicial resources is a primary consideration." Houston Trial Reports, Inc. v. LRP Publications, Inc., 85 F.Supp.2d 663, 670 (S.D. Tx. 1999). "The interest of justice mandates that the court try to prevent repetitive litigation." Fletcher v. Exxon Shipping Company, 727 F.Supp. 1086, 1087 (E.D. Tx. 1989).

Here, there are two identical lawsuits filed by BP simultaneously pending in New Orleans and Houston. Based on the location of the parties, critical non-parties and vast majority of potential witnesses in Texas as compared with the limited connection between the manufacture, sale, delivery and installation of the parking brake system and New Orleans, the Texas Court can more judiciously adjudicate preliminary issues such as personal jurisdiction over the defendants and discovery matters.

## CONCLUSION

This case's connections to Texas are overwhelming. The specifications of the braking system were developed in Houston, Texas. The contract of sale was negotiated in Houston, Texas. The brakes were delivered near Houston. The brakes were installed in a facility near Houston. After the event in question, BP's investigation of the occurrence was done in Houston. Both sides have principal corporate offices in Houston. Almost every key fact witness involving the development of the brakes, the sale of the brakes, the installation of the brakes, the maintenance of the brakes, and the post-incident investigation of the brakes reside in or near Houston or in Norway. In contrast, few key witnesses, if any, are subject to subpoena in the Eastern District of Louisiana. The public and private factors that must be weighed by the court in considering transfer under §1404(a) militate strongly in favor of transfer to the Southern District of Texas, where the plaintiffs have already brought an identical action for the same damages  against the same defendants.

This case's connections to Louisiana are as underwhelming as its connections to Texas are overwhelming. The only meaningful connection to Louisiana is that, under OCSLA, Louisiana law may apply to certain claims because the MAD DOG platform is located off the coast of Louisiana. BP's choice of the Eastern District of Louisiana as its preferred venue is entitled to little or no deference in light of the fact that BP is not located here.

This suit is exactly the situation to which § 1404(a) was designed to apply in order to prevent unnecessary inefficiency and inconvenience imposed by a plaintiff for the purpose of inconveniencing the defendants. NOV asks this Court to transfer this case home to the jurisdiction where parties are located.

28

WHEREFORE, National Oilwell Varco, L.P., Hydralift Amclyde, Inc. and Hydralift, Inc. respectfully request that this Court transfer venue under 28 U.S.C. §1404(a) to the United States District Court, Southern District of Texas.

Respectfully Submitted,

By _____

Charles A. Mouton

| | | |
|---|---|---|
| MAHTOOK & LAFLEUR, LLC<br>Charles A. Mouton<br>SBN 17721<br>Suite 1000<br>Lafayette, LA<br>70502<br>Tel: (337) 266-2189<br>Fax: (337)266-2303 | J.D. Page<br>SBN 15406700<br>3040 Post Oak Blvd.<br>Ste 850<br>Houston, TX<br>77056<br>Tel: (713) 840-9200<br>Fax: (713) 840-9217 | LEWIS, KULLMAN, STERBCOW & ABRAMSON<br>Lawrence S. Kullman<br>SBN 07884<br>2614 Pan American Life Center<br>601 Poydras St.<br>New Orleans, LA<br>70130<br>Tel: (504) 588-1500<br>Fax: (504) 588-1514 |

Counsel for National Oilwell Varco, L.P., National Oilwell Varco, Inc., National Oilwell Norway AS, Hydralift Amclyde, Inc., Hydralift, Inc., and Hydralift AS

29

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing has this date been served on all

counsel of record in this proceeding by:

( ) Hand Delivery                    ( ) Prepaid U. S. Mail

( ) Facsimile                        ( X ) CM/ECF System

Lafayette, Louisiana this _____ day of January, 2010.

_____

Charles A. Mouton

30