

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BP AMERICA PRODUCTION COMPANY, BP EXPLORATION & PRODUCTION INC., AND AMERICAN HOME ASSURANCE COMPANY | * * * | CIVIL ACTION<br>NO. **09-6218**<br>SECTION<br>MAGISTRATE **SECT. L MAG. 4** |
| versus | * | |
| NATIONAL OILWELL VARCO, LP, NATIONAL OILWELL VARCO, INC., NATIONAL OILWELL NORWAY AS, HYDRALIFT AS, HYDRALIFT AMCLYDE, INC., AND HYDRALIFT, INC. | * * * * | JUDGE<br><br>MAGISTRATE |

## **COMPLAINT**

The Complaint of plaintiffs, BP America Production Company ("BP America"), BP Exploration & Production Inc. ("BPX&P"), and American Home Assurance Company ("American Home"), against defendants, National Oilwell Varco, LP, National Oilwell Varco, Inc., National Oilwell Norway AS, Hydralift AS, Hydralift AmClyde, Inc., and Hydralift, Inc. (sometimes collectively referred to as the "NOV defendants"), avers as follows:



**1.**

At all pertinent times, plaintiffs, BP America and BPX&P, were, and still are, foreign corporations doing business in Louisiana.

**2.**

At all pertinent times, American Home, was, and still is, a foreign insurance company doing business in Louisiana.

**3.**

At all pertinent times, defendant, National Oilwell Varco, LP, was, and still is, a foreign partnership subject to personal jurisdiction in this Court.

**4.**

At all pertinent times, defendants, National Oilwell Varco, Inc., National Oilwell Norway AS, Hydralift AS, Hydralift AmClyde, Inc, and Hydralift, Inc., were, and still are, foreign corporations subject to personal jurisdiction in this Court.

**5.**

This Court has federal question subject matter jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. §§ 1331 et seq., and 28 U.S.C. § 1331.

**6.**

Venue is proper in this Court under the OCSLA venue provision, 43 U.S.C. § 1349(b).

**7.**

The Mad Dog spar platform is located in the Gulf of Mexico on the Outer Continental Shelf in federal lease block Green Canyon 782. The platform is utilized for the exploration and production of minerals on the Outer Continental Shelf.

**8.**

For purposes of OCSLA, Louisiana is the state adjacent to the Mad Dog platform, and Louisiana substantive law is applicable, as surrogate federal law, to all claims of plaintiffs herein.

**9.**

At all pertinent times, BPX&P was, and still is, the designated operator of the federal lease covering Green Canyon Block 872, lease number OCS-G 15610.

**9.**

At all pertinent times, the owners of the leasehold interests in lease number OCS-G 15610 and the Mad Dog platform were, and still are, BPX&P, BHP Petroleum (Deepwater) Inc., and Union Oil Company of California (sometimes collectively referred to herein as the "Mad Dog owners").

**10.**

As operator of lease number OCS-G 15610, BPX&P is authorized to bring this civil action on behalf of the Mad Dog owners.

**11.**

At all pertinent times, BP America and BPX&P were insured under a policy issued by American Home.  American Home is subrogated to the rights of plaintiffs to the extent of payments to or on behalf of plaintiffs under the aforesaid policy.

**12.**

Effective March 15, 2002, BP America, as agent for BPX&P, entered into a Drilling Rig Construction and Purchase Contract ("Construction and Purchase Contract") with Pride Offshore, Inc. ("Pride") related to the Mad Dog platform.

**13.**

Under the Construction and Purchase Contract, Pride agreed to design, construct, install, and sell a drilling rig to be mounted atop the Mad Dog platform at its offshore location on the Outer Continental Shelf.  In connection with the manufacture and sale of the rig under the Construction and Purchase Contract, Pride warranted and guaranteed, *inter alia*, that its design, construction, and other services would be performed in accordance with good and sound design and construction practices, that the drilling rig and all materials incorporated therein would be free from defects and perform in accordance with all requirements of the Construction and Purchase Contract, and that all materials furnished by Pride would be suitable in all respects for their intended purpose.

**14.**

In connection with the Construction and Purchase Contract, Pride subcontracted to the NOV defendants the design, manufacture, and installation of the drilling rig parking brake system used to secure the rig to the Mad Dog platform.

**15.**

On information and belief, the NOV defendants warranted and guaranteed, for the benefit of both Pride and plaintiffs, that its design, fabrication, installation, and other services would be performed in accordance with good and sound design and manufacturing practices, that the parking brake system and all materials incorporated therein would be free from defects, perform in accordance with all requirements of the Construction and Purchase Contract, and be suitable in all respects for the intended purpose of the parking brake system and the Mad Dog drilling rig and platform.

**16.**

In 2004, the parking brake system was installed on the Mad Dog drilling rig by the NOV defendants and Pride at a shipyard in Texas. During the installation process, the parking brake system was modified at the direction of the NOV defendants.

**17.**

Also in 2004, the drilling rig was installed atop the Mad Dog platform at its Green Canyon Block 782 location. Thereafter, the drilling rig commenced operation.

**18.**

At all pertinent times, the drilling rig was operated and maintained by Pride. On information and belief, the NOV defendants provided training and instruction to Pride regarding operation and maintenance of the parking brake system.

**19.**

Between 2004 and 2008, the NOV defendants performed various warranty, repair, maintenance, and other work on the Mad Dog parking brake system. This work was performed by the NOV defendants as subcontractor to Pride. In conjunction with this maintenance and repair work, the NOV defendants knew or should have known that one or more of the parking brakes had been taken out of service or removed from the rig.

**20.**

On September 11, 2008, Hurricane Ike passed through the Gulf of Mexico on its way to landfall on the Texas coast. As Ike passed the Green Canyon block 782 location, the Mad Dog platform experienced increased wind and sea conditions. During the storm, the parking brake system securing the Mad Dog drilling rig to the platform failed, and the rig slid off and over the

side of the platform into the Gulf of Mexico.  The drilling rig, which was owned by the Mad Dog owners, was a total loss.

### 21.

The parking brake system failed at loads well within the design parameters called for in the Construction and Purchase Contract and all related specifications.

### 22.

As the Mad Dog drilling rig slid over the side of the platform, the rig caused damage to the platform and various items of equipment on the platform, including a crane, piping, electrical equipment, instrumentation, handrails, and various other items.

### 23.

The failure of the parking brake system and resulting damage necessitated, and continues to necessitate, significant sue and labor, extra expense, overhead and manpower.

### 24.

The loss of the Mad Dog drilling rig and related damage to the platform prevented the immediate resumption of mineral production from existing wells.  As a result of this delay in production from existing wells, the Mad Dog owners sustained monetary losses of an as yet undetermined amount.

### 25.

As a further consequence of the loss of the Mad Dog drilling rig, there can be no additional drilling and exploration from the Mad Dog platform for a considerable time. The Mad Dog owners sustained, and will continue to sustain, substantial, and as yet undetermined, monetary damages as the direct result of this delay and inability to drill and develop new wells from the Mad Dog platform.

**26.**

The loss of the Mad Dog drilling rig will require the construction and installation of a replacement rig at substantial, but as yet undetermined, cost.

**27.**

The aforesaid damages were the direct and proximate cause of the failure of the Mad Dog parking brake system and, on information and belief, exceed $10 million.

**28.**

As the designer, manufacturer, installer, seller, and/or maintenance and repair subcontractor of the Mad Dog parking brake system that failed, the NOV defendants are liable to plaintiffs for all of the aforementioned damages on the following non-exclusive grounds:

a. Unreasonably dangerous, unsafe, and improper design, composition, or construction of the parking brake system.

b. Rendering the parking brake system unreasonably dangerous by failing to provide adequate and accurate instructions, operating and maintenance manuals, and warnings concerning operating characteristics, maintenance requirements, and other relevant information related to the parking brake system.

c. Nonconformity with and breach of express and implied warranties applicable to the design, manufacture, installation, sale, maintenance, and repair of the parking brake system.

d. Failure to alert the rig operator to the consequences of operation of the parking brake system with less than all of parking brakes in service.

e. Failure to provide adequate and proper training to persons or entities who the NOV defendants knew would be responsible for operation and maintenance of the parking brake system.

f. Failure to comply with applicable government and industry requirements pertaining to the design of drilling rig components.

g. Negligent maintenance and repair of the parking brake system

h. Faulty installation of the parking brake system.

i. Other negligent or unreasonably dangerous acts or omissions or product defects to be demonstrated at trial.

**29.**

One or more of the foregoing acts, omissions, or misrepresentations constitutes gross fault or negligence, reckless disregard, or willful or intentional misconduct on the part of the NOV defendants.

**30.**

The Mad Dog parking brake system was grossly defective as a matter of fact and law. Said defects were present, but hidden, from the time of delivery and installation of the parking brake system and constitute redhibitory defects under Louisiana law.

**31.**

Plaintiffs expressly plead their entitlement to all available damages under the provisions of the Louisiana Products Liability Act, the Louisiana Civil Code, including, but not limited to, Civil Code articles 2315 and 2520-2548, and any applicable contracts, warranties, guarantees, or other representations on the part of the NOV defendants.

**32.**

Plaintiffs, for themselves and on behalf of the Mad Dog owners, are entitled to recover all damages as aforesaid, plus all recoverable attorneys' fees, interest, and costs.

**33.**

Plaintiffs pray for trial by jury.

WHEREFORE, plaintiffs, BP America Production Company, BP Exploration & Production Inc., and American Home Assurance Company, pray that defendants, National Oilwell Varco, LP, National Oilwell Varco, Inc., National Oilwell Norway AS, Hydralift AS, Hydralft AmClyde, Inc., and Hydralift, Inc., be served with this Complaint and that after due proceedings are had, there be judgment in favor of plaintiffs against defendants for all damages sustained as a result of the incident described above, and for attorneys' fees, and all recoverable interest and costs, as well as all other relief to which plaintiffs may be entitled.

Respectfully submitted,

_____

S. Gene Fendler, T.A. (Bar # 5510)
David W. Leefe (Bar # 1479)
Carol Welborn Reisman (Bar # 20410)
LISKOW & LEWIS
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, Louisiana  70139-5099
Telephone:  (504) 581-7979
Facsimile:  (504) 556-4108
sgfendler@liskow.com
dwleefe@liskow.com
cwreisman@liskow.com

*Attorneys for BP America Production
Company, BP Exploration &
Production Inc., and American Home
Assurance Company*

789004_1.DOC

Cause No. **2009-58040**



| | | |
|---|---|---|
| BP EXPLORATION & PRODUCTION Inc., BP AMERICA PRODUCTION COMPANY, and AMERICAN HOME ASSURANCE COMPANY, | § § § § § § § | IN THE DISTICT COURT OF |
| **Plaintiffs** | § § | |
| V. | § § § | HARRIS COUNTY, TEXAS |
| NATIONAL OILWELL VARCO, LP, NATIONAL OILWELL VARCO, INC., NATIONAL OILWELL NORWAY AS, HYDRALIFT AS, HYDRALIFT AMCLYDE, INC., AND HYDRALIFT, INC., | § § § § § § § | |
| **Defendants** | § | **101 JUDICIAL DISTRICT** |

## PLAINTIFFS' ORIGINAL PETITION

Plaintiffs, BP America Production Company ("BP America"), BP Exploration & Production, Inc. ("BPX&P"), and American Home Assurance Company ("American Home"), file this Original Petition against defendants, National Oilwell Varco, LP, National Oilwell Varco, Inc., National Oilwell Norway AS, Hydralift AS, Hydralift AmClyde, Inc., and Hydralift, Inc. (sometimes collectively referred to as the "NOV defendants"):

### Discovery Control Plan

1.      Plaintiffs intend for discovery to be conducted under Level 2 of Rule 190, Texas Rules of Civil Procedure.

3

### Parties

2.      Plaintiffs, BP America and BPX&P, are Delaware corporations authorized to do business in Texas and maintain offices in Harris County, Texas.

3.      Plaintiff, American Home, is a New York insurance corporation authorized to do and doing business in Texas.

4.      Defendant, National Oilwell Varco, LP, is a Delaware partnership authorized to do business in Texas, and maintains its principal office in Harris County, Texas.  The partnership may be served by serving its registered agent for service, C. T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

5.      Defendant, National Oilwell Varco, Inc., is a Delaware corporation doing business in Texas.  The company does not maintain a registered agent for service of process in Texas.  The company may be served through the Texas Secretary of State for further service on its registered agent in Delaware, Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

6.      Defendant, National Oilwell Norway AS, is a foreign corporation doing business in Texas.  The company does not maintain a registered agent for service of process in Texas.  It may be served with process through the procedures authorized by the Hague Convention and by service on its parent, National Oilwell Varco, Inc., through the Texas Secretary of State.

7.      Defendant, Hydralift AS, is a foreign corporation doing business in Texas.  The company does not maintain a registered agent for service of process in Texas.  The company may be served with process through the procedures authorized by the Hague Convention and by serving its parent, National Oilwell Varco, Inc., through the Texas Secretary of State.

8.     Defendant, Hydralift AmClyde, Inc., is a Delaware corporation authorized to do business in Texas.  The company maintains its principal office in Harris County and may be served through its registered agent for service, C.T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

9.     Defendant, Hydralift, Inc., is a Delaware corporation authorized to do business in Texas.  The company maintains its principal office in Harris County and may be served with process through its registered agent for service, Larkin C. Eakin, 633 14th Street, Hempstead, Texas 77445.

### Jurisdiction and Venue

10.     Plaintiffs seek the recovery of damages in excess of the minimum subject matter jurisdiction of this Court.  The Court has personal jurisdiction of all Defendants because they do business in Texas.

11.     Venue is proper in Harris County under § § 15.002 (a) (3) and 15.005, Texas Civil Practice & Remedies Code because three of the Defendants maintain their principal offices in Harris County and because all claims arise out of the same transaction, occurrence, or series of transactions or occurrences.

### Facts

12.     The Mad Dog spar platform is located in the Gulf of Mexico on the Outer Continental Shelf in federal lease block Green Canyon 782.  The platform is utilized for the exploration and production of minerals on the Outer Continental Shelf.

13.     For purposes of the Outer Continental Shelf Lands Act, Louisiana is the state adjacent to the Mad Dog platform, and Louisiana substantive law is applicable, as surrogate federal law, to all claims asserted by BP America in this case.

14.     At all pertinent times, BPX&P was, and still is, the designated operator of the federal lease covering Green Canyon Block 872, lease number OCS-G 15610. The owners of the leasehold interests in lease number OCS-G 15610 and the Mad Dog platform were, and still are, BPX&P, BHP Petroleum (Deepwater) Inc., and Union Oil Company of California (sometimes collectively referred to herein as the "Mad Dog owners").

15.     As operator of lease number OCS-G 15610, BPX&P is authorized to bring this civil action on behalf of the Mad Dog owners.

16.     At all pertinent times, BP America and BPX&P were insured under a policy issued by American Home. American Home is subrogated to the rights of plaintiffs to extent on payments to or on behalf of plaintiffs under the aforesaid policy.

17.     Effective March 15, 2002, BP America, as agent for BPX&P, entered into a Drilling Rig Construction and Purchase Contract ("Construction and Purchase Contract") with Pride Offshore, Inc. ("Pride") related to the Mad Dog platform.

18.     Under the Construction and Purchase Contract, Pride agreed to design, construct, install, and sell a drilling rig to be mounted atop the Mad Dog platform at its offshore location on the Outer Continental Shelf. In connection with the manufacture and sale of the rig under the Construction and Purchase Contract, Pride warranted and guaranteed, *inter alia*, that its design, construction, and other services would be performed in accordance with good and sound design and construction practices, that the drilling rig and all materials incorporated therein would be free from defects and perform in accordance with all requirements of the Construction and Purchase Contract, and that all materials furnished by Pride would be suitable in all respects for their intended purpose.

19.     In connection with the Construction and Purchase Contract, Pride subcontracted to the NOV defendants the design, manufacture, and installation of the drilling rig parking brake system used to secure the rig to the Mad Dog platform.

20.     On information and belief, the NOV defendants warranted and guaranteed, for the benefit of both Pride and plaintiffs, that its design, fabrication, installation, and other services would be performed in accordance with good and sound design and manufacturing practices, that the parking brake system and all materials incorporated therein would be free from defects, perform in accordance with all requirements of the Construction and Purchase Contract, and be suitable in all respects for the intended purpose of the parking brake system and the Mad Dog drilling rig and platform.

21.     In 2004, the parking brake system was installed on the Mad Dog drilling rig by the NOV defendants and Pride at a shipyard in Texas.  During the installation process, the parking brake system was modified at the direction of the NOV defendants.

22.     Also in 2004, the drilling rig was installed atop the Mad Dog platform at its Green Canyon Block 782 location.  Thereafter, the drilling rig commenced operation.

23.     At all pertinent times, the drilling rig was operated and maintained by Pride.  On information and belief, the NOV defendants provided training and instruction to Pride regarding operation and maintenance of the parking brake system.

24.     Between 2004 and 2008, the NOV defendants performed various warranty, repair, maintenance, and other work on the Mad Dog parking brake system.  This work was performed by the NOV defendants as subcontractor to Pride.  In conjunction with this maintenance and repair work, the NOV defendants knew or should have known that one or more of the parking brakes had been taken out of service or removed from the rig.

25.     On September 11, 2008, Hurricane Ike passed through the Gulf of Mexico on its way to landfall on the Texas coast. As Ike passed the Green Canyon block 782 location, the Mad Dog platform experienced increased wind and sea conditions. During the storm, the parking brake system securing the Mad Dog drilling rig to the platform failed, and the rig slid off and over the side of the platform into the Gulf of Mexico. The drilling rig, which was owned by the Mad Dog owners, was a total loss.

26.     The parking brake system failed at loads well within the design parameters called for in the Construction and Purchase Contract and all related specifications.

27.     As the Mad Dog drilling rig slid over the side of the platform, the rig caused damage to the platform and various items of equipment on the platform, including a crane, piping, electrical equipment, instrumentation, handrails, and various other items.

28.     The failure of the parking brake system and resulting damage necessitated, and continues to necessitate, significant labor, extra expense, overhead, and manpower.

29.     The loss of the Mad Dog drilling rig and related damage to the platform prevented the immediate resumption of mineral production from existing wells. As a result of this delay in production from existing wells, the Mad Dog owners sustained monetary losses of an as yet undetermined amount.

30.     As a further consequence of the loss of the Mad Dog drilling rig, there can be no additional drilling and exploration from the Mad Dog platform for a considerable time. The Mad Dog owners sustained, and will continue to sustain, substantial, and as yet undetermined, monetary damages as the direct result of this delay and inability to drill and develop new wells from the Mad Dog platform.

31.     The loss of the Mad Dog drilling rig will require the construction and installation of a replacement rig at substantial, but as yet undetermined cost.

32.     The aforesaid damages were the direct and proximate cause of the failure of the parking brake system securing the drilling rig to the Mad Dog platform, and, on information and belief, exceed $10 million.

### Causes of Action

33.     As the designer, manufacturer, installer, seller, and/or maintenance and repair subcontractor of the Mad Dog parking brake system that failed, the NOV defendants are liable to plaintiffs for all of the aforementioned damages on the following non-exclusive grounds:

a.  Unreasonably dangerous, unsafe, and improper design, composition, or construction of the parking brake system.

b.  Rendering the parking brake system unreasonably dangerous by failing to provide adequate and accurate instructions, operating and maintenance manuals, and warnings concerning operating characteristics, maintenance requirements, and other relevant information related to the parking brake system.

c.  Nonconformity with and breach of express and implied warranties applicable to the design, manufacture, installation, sale, maintenance, and repair of the parking brake system.

d.  Failure to alert the rig operator to the consequences of operation of the parking brake system with less than all of parking brakes in service.

e.  Failure to provide adequate and proper training to persons or entities who the NOV defendants knew would be responsible for operation and maintenance of the parking brake system.

f.   Failure to comply with applicable government and industry requirements pertaining to the design of drilling rig components.

g.   Negligent maintenance and repair of the parking brake system

h.   Faulty installation of the parking brake system.

i.   Other negligent or unreasonably dangerous acts or omissions or product defects to be demonstrated at trial.

34.    One or more of the foregoing acts, omissions, or misrepresentations constitutes gross fault or negligence, reckless disregard, or willful or intentional misconduct on the part of the NOV defendants.

35.    The Mad Dog parking brake system was grossly defective as a matter of fact and law.   Said defects were present, but hidden, from the time of delivery and installation of the parking brake system and constitute redhibitory defects under Louisiana law.

36.    Plaintiffs expressly plead their entitlement to all available damages under the provisions of the Louisiana Products Liability Act, the Louisiana Civil Code, including, but not limited to, Civil Code articles 2315 and 2520-2548, and any applicable contracts, warranties, guarantees, or other representations on the part of the NOV defendants.

37.    Plaintiffs, for themselves and on behalf of the Mad Dog owners, are entitled to recover all damages as aforesaid, plus all recoverable attorneys' fees, interest, and costs.

**Jury Demand**

38.    Plaintiffs request a trial by jury.

**Relief Requested**

39.    Plaintiffs ask the Court for the following relief:

a.  the issuance of citation requiring defendants, National Oilwell Varco, LP, National Oilwell Varco, Inc., National Oilwell Norway AS, Hydralift AS, Hydralft AmClyde, Inc., and Hydralift, Inc., to appear and answer this Original Petition;

b.  an award of actual damages;

c.  an award of attorneys' fees;

d.  an award of pre and post-judgment interests;

e.  an award of costs;

f.  an award of such other relief to which Plaintiffs may be entitled to receive.

Respectfully submitted,

LISKOW & LEWIS

By: _Hayden Burns_

Hayden Burns
State Bar No.: 03456000
First City Tower
1001 Fannin Street, Suite 1800
Houston, Texas  77002
Carol Welborn Reisman
State Bar No.:  24052638
One Shell Square
701 Poydras Street, Suite 5000
New Orleans, LA  70139
Telephone:  (713) 651-2900 (main)
Telephone:  (713) 651-2964 (direct)
Facsimile:  (713) 651-2908
ATTORNEYS FOR BP AMERICA
PRODUCTION COMPANY, BP
EXPLORATION & PRODUCTION,
INC., AND AMERICAN HOME
ASSURANCE COMPANY



CAUSE NO. 2009-58040

| | | |
|---|---|---|
| BP EXPLORATION & PRODUCTION, INC., ET AL | * | IN THE DISTRICT COURT OF |
| | * | |
| VERSUS | * | HARRIS COUNTY, TEXAS |
| | * | |
| NATIONAL OILWELL VARCO, LP, ET AL | * | 61ST JUDICIAL DISTRICT |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## NOTICE OF REMOVAL

TO:  Mr. Hayden Burns
     Liskow & Lewis
     First City Tower
     1001 Fannin Street, Suite 1800
     Houston, Texas  77002

     Ms. Carol Welborn Reisman
     Liskow & Lewis
     One Shell Square
     701 Poydras Street, Suite 5000
     New Orleans, Louisiana  70139-5099

     PLEASE TAKE NOTICE that on the 16th day of October, 2009,

defendants, National Oilwell Varco, LP, National Oilwell Varco,

Inc., Hydralift Amclyde, Inc., and Hydralift, Inc., filed with

the United States District Court in and for the Southern District

of Texas, a Notice of Removal of the action entitled "BP

Exploration & Production, Inc., BP America Production Company,

and American Home Assurance Company vs. National Oilwell Varco,

LP, National Oilwell Varco, Inc., National Oilwell Norway AS,

Hydralift AS, Hydralift Amclyde, Inc., and Hydralift, Inc.",

bearing Cause Number 2009-58040 on the docket of the 61st

Judicial District Court for the County of Harris, State of Texas,

4

to the United States District Court in and for the Southern District of Texas.

Respectfully Submitted,

J. D. PAGE
(TBA #15406700)
3155 Phoenix Tower
3200 Buffalo Speedway
Houston, Texas  77027
Telephone :  (713) 840-9200
Telecopier:  (713) 840-9217

AND

BY: _Charles A. Mouton_
CHARLES A. MOUTON
(TBA #00785599)
Mahtook & Lafleur, L.L.C.
P. O. Box 3089
Lafayette, LA  70502
600 Jefferson Street
Suite 1000 (70501)
Telephone :  (337) 266-2189
Telecopier:  (337) 266-2303

Counsel for National Oilwell
Varco, L.P., National Oilwell
Varco, Inc., Hydralift Amclyde,
Inc. and Hydralift, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has this date been served on all counsel of record in this proceeding by:

(   ) Hand Delivery      (   ) Prepaid U. S. Mail

( X ) Facsimile          (   ) Federal Express

Lafayette, Louisiana this 19th day of October, 2009.

_Charles A. Mouton_
CHARLES A. MOUTON



CAUSE NO. 2009-58040

| | | |
|---|---|---|
| BP EXPLORATION & PRODUCTION, INC., ET AL | * | IN THE DISTRICT COURT OF |
| | * | |
| VERSUS | * | HARRIS COUNTY, TEXAS |
| | * | |
| NATIONAL OILWELL VARCO, LP, ET AL | * | 61ST JUDICIAL DISTRICT |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## ANSWER TO PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, National Oilwell Varco, L.P., Hydralift Amclyde, Inc. and Hydralift, Inc., defendants in the above entitled and numbered cause, and files this their Answer to the Plaintiffs' Original Petition, and would respectfully show the Court the following:

### GENERAL DENIAL

1.

In accordance with the rights granted to it by Rule 92 of the Texas Rules of Civil Procedure, defendants generally deny each and every material allegation contained in Plaintiffs' Original Petition and demands strict proof thereof by a preponderance of the evidence.

### AFFIRMATIVE DEFENSES

2.

Defendants deny that they or anyone for whom they may be responsible was guilty of any negligence, products liability, want of due care, or other legal fault constituting a proximate



cause of the alleged incident in question.  Defendants deny that
any product supplied by defendants was unreasonably dangerous in
design, construction or composition, due to any inadequate
warning or non-conformity to express warranty so as to give rise
to liability under the Louisiana Products Liability Act ("LPLA"),
La. R.S. 9:2800.55-58 et seq.  Defendants specifically plead the
terms, limitations of liability, responsibility and affirmative
defenses set forth under the LPLA as if copied herein in extenso.

3.

Defendants deny that any product upon which liability or
responsibility is claimed was being put to its reasonably
anticipated use, or that the plaintiffs' damages were proximately
caused by an unreasonably dangerous characteristic of the
product.

4.

Alternatively, defendants aver that any alleged unreasonably
dangerous conditions existing in the alleged product resulted by
misuse or abuse, improper use, improper repairs, improper
maintenance and/or material or alterations on the part of other
persons or entities for whom defendants are not responsible.

5.

In the further alternative, if defendants or anyone for whom
defendants may be responsible was guilty of any negligence,
products liability, want of due care, or other legal fault
constituting a proximate cause of the alleged incident in

-2-

question, or if for any other reason defendants would be responsible to the plaintiffs in this suit, defendants aver that plaintiffs were guilty of contributorily negligence constituting the sole proximate cause of the alleged incident in question, which defeats recovery herein, or alternatively a contributing cause which reduces plaintiffs' recovery accordingly.

6.

In the further alternative, defendants aver that if plaintiffs suffered any damages, which is denied, said damages were caused by the acts, careless, inattention to duty, omissions, breach of contract or other conduct of third persons, for whose fault and negligence defendants are not liable.

7.

Defendants aver as a complete defense that plaintiffs' alleged damages alleged by plaintiffs were caused solely by Hurricane Ike, an unanticipated grave natural disaster, a force majeure, vis major or Act of God.  Defendants exercised prudence, diligence, care and reasonable engineering principals and standards in following the design criteria specified by plaintiffs' and/or Pride in providing any product which ultimately came to be used aboard the MAD DOG, and accordingly are not liable to plaintiffs' for any alleged damages.

8.

Defendants aver that plaintiffs and/or Pride were "sophisticated users" of any product supplied by any defendant,

-3-

and that plaintiffs were responsible for any engineering design reviews in connection with any product designed or manufactured by defendants. Defendants further aver that plaintiffs and/or Pride and/or their agents and representatives had full control over the use and operation of all products supplied by defendants, and were directly responsible for and aware of any missing parking brake removed from service prior to the incident, as well as the damages associated with such products. Defendants therefore had no duty to warn plaintiffs' about any damages concerning the use, operation or maintenance of any product supplied by defendants.

9.

Plaintiffs' damages, if any, were caused by intervening or superceding causes for which defendants are not responsible or liable.

10.

The subject product or products complied with the state of the art at the time of its/their sale by defendants.

11.

Defendants aver that no timely notice or opportunity to repair were given to defendants of the existence of any alleged defect in its product, if any, and as such, plaintiffs' recovery against defendants must be precluded, or in the alternative, diminished to the extent that any alleged defect could have been repaired.

-4-

12.

Plaintiffs' alleged damages were the result of an inevitable or unavoidable incident occasioned by Hurricane Ike. Specifically, the equipment and/or products allegedly designed, manufactured or supplied by defendants met the design standards provided by plaintiffs and/or Pride. Plaintiffs' alleged damages were caused or occasioned by the violence of Hurricane Ike, a vis major, which produced forces which exceeded the design characteristics of the parking brakes.

13.

Plaintiffs failed to mitigate their damages as required by law.

14.

Pursuant to Rule 216 of the Texas Rules of Civil Procedure, defendants make this demand and application for a jury trial in this case. A jury fee is being paid in this cause with the filing of this Answer.

15.

Defendants reserve the right to amend their its Answer to Plaintiffs' Original Petition after they have had an opportunity to more closely investigate these claims as is their right and privilege under the Texas Rules of Civil Procedure and the laws of the State of Texas.

WHEREFORE, PREMISES CONSIDERED, defendants, National Oilwell Varco, L.P., Hydralift Amclyde, Inc., and Hydralift, Inc.,

respectfully pray that plaintiffs take nothing as against these defendants, that defendants be awarded their costs and attorney's fees, and for all such other and further relief, both general and special, at law and in equity, to which they may show themselves justly entitled.

J. D. PAGE
(TBA #15406700)
3155 Phoenix Tower
3200 Buffalo Speedway
Houston, Texas  77027
Telephone :  (713)840-9200
Telecopier:  (713)840-9217

AND

BY: _Charles A. Mouton_

CHARLES A. MOUTON
(TBA #00785599)
Mahtook & Lafleur, L.L.C.
P. O. Box 3089
Lafayette, LA  70502
600 Jefferson Street
Suite 1000 (70501)
Telephone :  (337)266-2189
Telecopier:  (337)266-2303

Counsel for National Oilwell
Varco, L.P., Hydralift Amclyde,
Inc. and Hydralift, Inc.

-6-

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing has this date been served on all counsel of record in this proceeding by:

(   ) Hand Delivery       (   ) Prepaid U. S. Mail

( X ) Facsimile           (   ) Federal Express

Lafayette, Louisiana this 16th day of October, 2009.

_____
CHARLES A. MOUTON

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BP EXPLORATION & PRODUCTION, INC., ET AL. | § | |
|     Plaintiffs, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-CV-03360 |
| | § | |
| NATIONAL OILWELL VARCO, LP, ET AL. | § | |
| | § | |
|     Defendants. | § | |

## ANSWER OF DEFENDANTS NATIONAL OILWELL VARCO, INC. AND NATIONAL OILWELL NORWAY, AS

Defendants National Oilwell Varco, Inc. and National Oilwell Norway AS (collectively, "Defendants") file this answer to the original petition filed by plaintiffs BP America Production Company, BP Exploration & Production, Inc. and American Home Assurance Company (collectively, "Plaintiffs").

### ANSWER

Defendants deny each and every allegation of the Plaintiffs' original petition, except as the same may be admitted or modified herein. Further responding to the said allegations, Defendants aver as follows:

    1.    Defendants admit that Plaintiffs intended to conduct discovery under Level 2 of Rule 190 of the Texas Rules of Civil Procedure at the time of filing but that discovery will now be conducted under the Federal Rules of Civil Procedure.

    2.    Defendants are without sufficient information to admit or deny paragraph 2.

    3.    Defendants are without sufficient information to admit or deny paragraph 3.

    4.    Defendants admit the allegations in paragraph 4.

1



5.      National Oilwell Varco, Inc. admits that it is a Delaware corporation and does not maintain a registered agent for service of process in Texas.  National Oilwell Varco, Inc. denies that it does business in Texas.

6.      National Oilwell Norway AS admits that it is a foreign corporation and does not maintain a registered agent for service of process in Texas.  National Oilwell Norway AS denies that it does business in Texas.

7.      Defendants admit that Hydralift AS is a foreign corporation and does not maintain a registered agent for service of process in Texas.  Defendants deny that Hydralift AS does business in Texas.

8.      Defendants admit the allegations in paragraph 8.

9.      Defendants admit the allegations in paragraph 9.

10.     Defendants admit that Plaintiffs seek damages in excess of the minimum subject matter jurisdiction of this Court but deny that all Defendants do business in Texas.  National Oilwell Varco, Inc. specifically denies that it does business in Texas.  However, National Oilwell Varco, Inc. admits that a formerly existing entity known as Hydralift, Inc. was merged into National Oilwell Varco, Inc.  National Oilwell Varco, Inc. admits that, prior to the merger, Hydralift, Inc. did business in the Texas in connection with the transactions and events out of which this lawsuit arises.  National Oilwell Norway, AS specifically denies that it does business in Texas.  However, National Oilwell Norway, AS admits that a formerly existing entity known as Hydralift, AS was merged into National Oilwell Norway, AS.  National Oilwell Norway, AS admits that, prior to the merger, Hydralift, AS did business in the Texas in connection with the transactions and events out of which this lawsuit arises.

11.     Defendants admit that venue is proper in Harris County.

2

12.     Defendants are without sufficient information to admit or deny paragraph 12.

13.     The allegations of paragraph 13 constitute conclusions of law, and, as such, require neither an affirmative nor negative response on behalf of Defendants, but insofar as it may be deemed necessary, the allegations are denied.

14.     Defendants are without sufficient information to admit or deny paragraph 14.

15.     Defendants are without sufficient information to admit or deny paragraph 15.

16.     Defendants are without sufficient information to admit or deny paragraph 16.

17.     Defendants are without sufficient information to admit or deny paragraph 17.  To the extent necessary, Defendants aver that the best evidence of the terms, conditions, provisions, limitations and exclusions of the referenced "Construction and Purchase Contract" are contained in the contract itself.  Defendants specifically plead the terms of the contract as if copied herein in full and place Plaintiffs on their full proof of any allegations seeking to infer liability on behalf of any party by virtue of the existence of said contract.

18.     Defendants are without sufficient information to admit or deny paragraph 18.  To the extent necessary, Defendants aver that the best evidence of the terms, conditions, provisions, limitations and exclusions of the referenced "Construction and Purchase Contract" are contained in the contract itself.  Defendants specifically plead the terms of the contract as if copied herein in full and place Plaintiffs on their full proof of any allegations seeking to infer liability on behalf of any party by virtue of the existence of said contract.

19.     Defendants deny the allegations in paragraph 19 as written.

20.     Defendants deny the allegations in paragraph 20 as written.

21.     Defendants admit that certain equipment was installed in Texas in connection with the Derrick Equipment Set ultimately placed on the MAD DOG spar.  Defendants deny the

3

remaining allegations of paragraph 21.

22.     Defendants are without sufficient information to admit or deny paragraph 22.

23.     Defendants admit, upon information and belief, that the drilling rig was operated and maintained by Pride.  Defendants deny the remaining allegations of paragraph 23.

24.     Defendants deny the allegations in paragraph 24.

25.     Defendants admit that Hurricane Ike passed through the Gulf of Mexico on September 11, 2007.  Defendants deny the remaining allegations of paragraph 25.

26.     Defendants deny the allegations in paragraph 26.

27.     Defendants are without sufficient information to admit or deny paragraph 27.

28.     Defendants deny the allegations in paragraph 28.

29.     Defendants deny the allegations in paragraph 29.

30.     Defendants deny the allegations in paragraph 30.

31.     Defendants deny the allegations in paragraph 31.

32.     Defendants deny the allegations in paragraph 32.

33.     Defendants deny the allegations in paragraph 33.

34.     Defendants deny the allegations in paragraph 34.

35.     Defendants deny the allegations in paragraph 35.

36.     The allegations of paragraph 36 constitute conclusions of law, and, as such, require neither an affirmative nor negative response on behalf of defendants, but insofar as it may be deemed necessary, the allegations are denied.

37.     Defendants deny the allegations in paragraph 37.

38.     The allegations of paragraph 38 require neither an affirmative nor negative response on behalf of Defendants.  Defendants also pray for trial by jury on all issues.

39.     Defendants deny that Plaintiffs are entitled to the requested relief.

## DEFENSES

40.     Defendants deny that they or anyone for whom they may be responsible are guilty of any negligence, products liability, want of due care, or other legal fault constituting a proximate cause of the alleged incident in question.  Defendants deny that any product supplied by defendants was unreasonably dangerous in design, construction or composition, due to any inadequate warning or non-conformity to any warranty so as to give rise to liability under the Louisiana Products Liability Act ("LPLA"), La. R.S. 9:2800.55-58 *et seq.*   Defendants specifically plead the terms, limitations of liability, responsibility and affirmative defenses set forth under the LPLA as if set forth in their entirety herein.

41.     Defendants deny that any product upon which liability or responsibility is claimed was being put to its reasonably anticipated use, or that Plaintiffs' damages were proximately caused by an unreasonably dangerous characteristic of the product.  Alternatively, Defendants aver that any alleged unreasonably dangerous conditions existing in the alleged product resulted by misuse or abuse, improper use, improper repairs, improper maintenance and/or material alterations on the part of other persons or entities for which Defendants are not responsible.

42.     In the further alternative, if Defendants or anyone for whom Defendants may be responsible is guilty of any negligence, products liability, want of due care, or other legal fault constituting a proximate cause of the alleged incident in question, or if for any other reason Defendants would be responsible to Plaintiffs in this suit, Defendants aver that Plaintiffs are guilty of contributory negligence constituting the sole proximate cause of the alleged incident in question, which defeats recovery herein, or alternatively a contributing cause which reduces Plaintiffs' recovery accordingly.

5

43.     In the further alternative, Defendants aver that if Plaintiffs suffered any damages, which is denied, said damages were caused by the acts, careless, inattention to duty, omissions, breach of contract or other conduct of third parties, for whose fault and negligence Defendants are not liable.

44.     Defendants aver as a complete defense that Plaintiffs' alleged damages were caused solely by Hurricane Ike, an unanticipated grave natural disaster, an event of force majeure, and/or Act of God.  Defendants exercised prudence, diligence, care and reasonable engineering principals and standards in following the design criteria specified by Plaintiffs and/or Pride in providing any product which ultimately came to be used aboard the MAD DOG, and accordingly are not liable to Plaintiffs for any alleged damages.

45.     Defendants aver that Plaintiffs and/or Pride were learned intermediaries and/or sophisticated users of any product supplied by any Defendant, were involved in the initial engineering and design review of the product, and that Pride specifically provided load data relied upon by Defendants in the manufacture of the parking brakes.

46.     Alternatively, Plaintiffs had an opportunity to and did in fact conduct engineering design reviews in connection with the products designed and/or manufactured by Defendants between the time of the sale, installation and the incident at issue.  Plaintiffs are therefore estopped from claiming any deficiency in the design or manufacture of the units.

47.     Defendants further aver that Plaintiffs and/or Pride and/or their agents and representatives had full control over the design, operation and use of all products supplied by Defendants, and were directly responsible for and aware of any missing parking brake removed from service prior to the incident, as well as the damages associated with such products. Defendants therefore had no duty to warn Plaintiffs about any damages concerning the use,

operation or maintenance of any product supplied by any Defendant.

48.     Plaintiffs' damages, if any, were caused by intervening or superceding causes for which Defendants are not responsible or liable.

49.     The subject product or products complied with the state of the art at the time of its/their sale by Defendants.

50.     Defendants aver that no timely notice or opportunity to repair were given to Defendants of the existence of any alleged defect in its product(s), if any, and as such, Plaintiffs' recovery against Defendants must be precluded, or in the alternative, diminished to the extent that any alleged defect could have been repaired.

51.     Plaintiffs' alleged damages were the result of an inevitable or unavoidable incident occasioned by Hurricane Ike.  Specifically, the equipment and/or products allegedly designed, manufactured or supplied by Defendants met the design standards provided by Plaintiffs and/or Pride.  Plaintiffs' alleged damages were caused or occasioned by the violence of Hurricane Ike, which produced forces that exceeded the design characteristics of the parking brakes.

52.     Defendants affirmatively plead all of the applicable terms and provisions of any contract between Plaintiffs and Pride Offshore and/or Pride International, including, but not limited to, the BP/Pride Drilling Rig Construction and Purchase Contract and the Drilling Rig Operation and Maintenance Services Contract relative to the MAD DOG project, the same being made a part hereof by reference and pled as if restated in their entirety herein.  Based on these contracts, Plaintiffs have assumed the risk and/or liability for losses of the type for which it has sued herein and/or has waived its rights, if any, with respect to any damages claimed.  Plaintiffs have, by contract, abrogated, waived, relinquished, renounced or abandoned the claims it urges

against the Defendants herein.  Defendants specifically plead the protection of the limitation of damages provisions contained in the BP/Pride Drilling Rig Construction and Purchase Contract and the Drilling Rig Operation and Maintenance Services Contract.  Defendants also specifically plead that they are entitled to defense, indemnity, insurance, release and to be held harmless from and by Plaintiffs pursuant to Articles 14 and 15 of the Drilling Rig Construction and Purchase Contract and the Drilling Rig Operation and Maintenance Services Contract.

53.     Defendants further plead that Plaintiffs have failed to mitigate their damages as required by law.

## PRAYER

Defendants respectfully request that the Court enter judgment that Plaintiffs take nothing, dismiss Plaintiffs' suit with prejudice, assess costs against Plaintiffs, and award Defendants all other relief the Court deems appropriate.

Respectfully submitted,

By: /s/ _____
    Melissa M. Davis

| | | | |
|---|---|---|---|
| MAHTOOK & LAFLEUR, LLC<br>Charles A. Mouton<br>SBN 17721<br>Kay A. Theunissen<br>SBN 17448<br>P.O. Box 3089<br>600 Jefferson St.<br>Suite 1000<br>Lafayette, LA 70502<br>Tel:  (337) 266-2189<br>Fax: (337)266-2303 | J.D. Page<br>*Lead Counsel*<br>SBN 15406700<br>3155 Phoenix Tower<br>3200 Southwest Freeway<br>Houston, TX 77027<br>Tel: (713) 840-9200<br>Fax: (713) 840-9217 | LEWIS, KULLMAN, STERBCOW & ABRAMSON<br>Lawrence S. Kullman<br>SBN 07884<br>2614 Pan American Life Center<br>601 Poydras St.<br>New Orleans, LA 70130<br>Tel: (504) 588-1500<br>Fax: (504) 588-1514 | WARE, JACKSON, LEE & CHAMBERS, LLP<br>Melissa M. Davis<br>SBN 24045756<br>2929 Allen Pkwy, Fl. 42<br>Houston, TX 77019<br>Tel: (713) 659-6400<br>Fax: (713) 659-6262 |

Counsel for National Oilwell Varco, L.P., National Oilwell Varco, Inc., National Oilwell Norway AS, Hydralift Amclyde, Inc., and Hydralift, Inc.

8

## CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of January, 2010, I electronically filed the foregoing document with the clerk of the court for the United States District Court, Southern District of Texas, using the electronic case filing system of the Court. The electronic case filing system will send a "Notice of Electronic Filing" to counsel of record who have consented in writing to accept this Notice as service of this document by electronic means; I further certify that I have served counsel of record who have not so consented to electronic service by certified mail, return receipt requested.

/s/ _____
Melissa M. Davis

9

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BP EXPLORATION & PRODUCTION, INC., ET AL | * | CIVIL ACTION NO. 09-3360 |
| | * | |
| | * | |
| VERSUS | * | JUDGE ATLAS |
| | * | |
| NATIONAL OILWELL VARCO, LP, ET AL | * | |
| | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## HYDRALIFT AS' MOTION TO DISMISS
## PURSUANT TO RULE 12(b)(2)

NOW INTO COURT, through undersigned counsel, comes Hydralift AS, appearing solely for purposes of this Motion to contest personal jurisdiction over the defendant, and respectfully moves this Court to dismiss any and all claims asserted against Hydralift AS pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  In support of this Motion, Hydralift AS respectfully shows that it is a Norwegian corporation formerly known as "National Oilwell Norway Real Estate Holdings AS" and is a non-resident of the State of Texas. The current entity known as "Hydralift AS" is not and was not involved in the design, manufacture or sale of equipment, and only owns real estate located in Norway.  Hydralift AS has had no purposeful contacts with Texas generally or specifically in connection with the action which forms the basis of this litigation.  Hydralift AS therefore lacks the required minimum

7

contacts with the State of Texas necessary to permit a Texas forum to exercise personal jurisdiction over it, and this claim does not arise out of any specific activity of the entity currently known as Hydralift AS in the State of Texas.

For the foregoing reasons, Hydralift AS respectfully prays that this Court dismiss any and all claims asserted against it in this proceeding, with all costs incurred to be assessed against plaintiffs.

Respectfully Submitted,

J. D. PAGE
(TBA #15406700)
3155 Phoenix Tower
3200 Buffalo Speedway
Houston, Texas   77027
Telephone :  (713) 840-9200
Telecopier:  (713) 840-9217

AND

BY:   s/Charles A. Mouton
CHARLES A. MOUTON
(TBA #00785599)
Mahtook & Lafleur, L.L.C.
P. O. Box 3089
Lafayette, LA  70502
600 Jefferson Street
Suite 1000 (70501)
Telephone :  (337) 266-2189
Telecopier:  (337) 266-2303

AND

WARE, JACKSON, LEE & CHAMBERS
MELISSA M. DAVIS
(TBA #24045756
2929 Allen Parkway, Floor 42
Houston, Texas  77019
Telephone :  (713) 659-6400
Telecopier:  (713) 659-6262

Counsel for Hydralift AS

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing has this date been served on all counsel of record in this proceeding by:

( ) Hand Delivery      ( ) Prepaid U. S. Mail

( ) Facsimile        ( X ) CM/ECF System

Lafayette, Louisiana this 11th day of January, 2010.

   s/Charles A. Mouton

CHARLES A. MOUTON

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BP EXPLORATION & PRODUCTION,      *   CIVIL ACTION NO. 09-3360
INC., ET AL                       *
                                  *
VERSUS                            *   JUDGE ATLAS
                                  *
NATIONAL OILWELL VARCO, LP,       *
ET AL                             *
                                  *

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF
## HYDRALIFT AS' MOTION TO DISMISS
## PURSUANT TO RULE 12(b)(2)

MAY IT PLEASE THE COURT:

Hydralift AS was served through delivery of Summons and
Complaint in Norway pursuant to the Hague Convention on Service
Abroad of Judicial and Extrajudicial Documents in Civil or
Commercial Matters.  The evidence will show that in August 2004,
an entity known as "Hydralift AS" was dissolved for merger with
National Oilwell-Hydralift AS.  National Oilwell-Hydralift AS was
subsequently merged with National Oilwell Norway AS.
Accordingly, to the extent the former entity known as "Hydralift
AS" manufactured or sold any equipment in Norway, that legal
entity was dissolved and ultimately merged with National Oilwell
Norway AS, also named as a defendant in this action.

In 2004, National Oilwell Norway Real Estate Holdings AS
existed for the sole purposes of owning real estate in Norway.
In order to protect the name "Hydralift AS" for competitive

purposes, National Oilwell Norway Real Estate Holdings AS was renamed "Hydralift AS".  Therefore, the entity upon which plaintiff has made service of the Complaint has no contacts with either Louisiana or Texas, nor does this lawsuit arise out of any activity of the real estate holding company in Norway.

ARGUMENT AND AUTHORITY

A.   Legal Standards

To be subject to *in personam* jurisdiction, plaintiffs must prove that Hydralift AS has "... certain minimum contacts with (Texas) such that the maintenance ... (this) suit does not offend 'traditional notions of fair play and substantial justice' ...". International Shoe Company v. Washington, 326 U.S. 310, 316 (1945).  When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff has the burden of establishing jurisdiction.  Guidry v. U. S. Tobacco Company, 188 F.3d 619, 625 (5th Cir. 1999); Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994).  A plaintiff must make "a prima facie case by alleging facts in the complaint and affidavits sufficient to establish jurisdiction over the non-resident defendant."  Caldwell v. Palmetto State SAV, Bank of S.C., 811 F.2d 916, 917 (5th Cir. 1987).

Regarding the test for minimum contacts, a defendant's contact with the forum may support a federal Court's exercise of either "general" or "specific" personal jurisdiction.  Wilson, 20 F.3d at 647.  General personal jurisdiction enables a Court to

hear cases unrelated to the defendant's forum activities, but exists only if the defendant has "substantial" or "continuous and systematic" contacts with the forum state.  <u>Id.</u>  Conversely, the Court's exercise of specific jurisdiction over a non-resident defendant is appropriate only when the cause of action is sufficiently related to or arises out of the defendant's contacts with the forum state.  <u>Id.</u>

      1.   <u>Hydralift AS Lacks Minimum Contacts with Texas</u>

Hydralift AS is presently a Norwegian corporation that is not registered or licensed to do business in the State of Texas. Hydralift AS as it currently exists is a corporation that does not conduct operations in Texas.  The former "Hydralift AS" entity has been merged into National Oilwell Norway AS, also named as a defendant.  There are no systematic or continuous connections between the current entity known as Hydralift AS and Texas to justify general jurisdiction.

Plaintiffs' Complaint fails to set forth any facts to support any basis for this Court to exercise general jurisdiction over Hydralift AS in Texas, because none exist.  Plaintiffs have not specifically alleged that the current entity known as Hydralift AS sold, designed, manufactured or installed <u>any</u> equipment in Texas, much less that any of these activities with respect to the parking brakes at issue occurred in Texas.

2.    <u>Special Jurisdiction</u>

A defendant's contacts with the forum state may give rise to specific jurisdiction when "(1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendant's contacts within the forum state." <u>Freudensprung v. Offshore Tech. Servs., Inc.</u>, 379 F.3d 327, 343 (5th Cir. 2004).  Stated another way, "when the cause of action relates to the defendant's contact within the forum, the 'minimum contacts' requirement is satisfied, and 'specific' jurisdiction is proper, so long as that contact resulted from the defendant's purposeful conduct and not the unilateral activity of the plaintiff."  <u>Bearry v. Beach Aircraft Corp.</u>, 818 F.2d 370, 374 (5th Cir. 1987)(citing <u>World-wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297-98 (1980).

Under the facts as presented in the Complaint, there are no contacts between Hydralift AS, a non-resident, and Texas.  The entity currently known as "Hydralift AS" is a real estate holding company that does not design, manufacture or sell equipment.  Therefore, Hydralift AS moves that this action be dismissed as to this defendant.

<u>CONCLUSION</u>

Hydralift AS submits that the application of the above controlling jurisprudence precludes a finding of personal jurisdiction over this defendant, since there is no specific

personal jurisdiction arising out of the cause of action asserted by the plaintiffs, nor general personal jurisdiction because Hydralift AS lacks any continuous and systematic contacts with Texas.  Accordingly, the exercise of personal jurisdiction over this Norwegian defendant with no continuous contacts with Texas would offend traditional notions of fair play and substantial justice.

Respectfully Submitted,

J. D. PAGE
(TBA #15406700)
3155 Phoenix Tower
3200 Buffalo Speedway
Houston, Texas  77027
Telephone :  (713)840-9200
Telecopier:  (713)840-9217

AND

BY:    s/Charles A. Mouton
CHARLES A. MOUTON
(TBA #00785599)
Mahtook & Lafleur, L.L.C.
P. O. Box 3089
Lafayette, LA  70502
600 Jefferson Street
Suite 1000 (70501)
Telephone :  (337)266-2189
Telecopier:  (337)266-2303

AND

WARE, JACKSON, LEE & CHAMBERS
MELISSA M. DAVIS
(TBA #24045756
2929 Allen Parkway, Floor 42
Houston, Texas  77019
Telephone :  (713)659-6400
Telecopier:  (713)659-6262

Counsel for Hydralift AS

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing has this date been served on all counsel of record in this proceeding by:

(   ) Hand Delivery      (   ) Prepaid U. S. Mail

(   ) Facsimile          ( X ) CM/ECF System

Lafayette, Louisiana this 11th day of January, 2010.

                 <u>s/Charles A. Mouton</u>
                 CHARLES A. MOUTON

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

BP Exploration & Production, Inc., et al.

Plaintiff

v.                                                    Civil Action No. 4:09–cv–03360

National Oilwell Varco, LP, et al.

Defendant

## ORDER FOR CONFERENCE
### AND
## DISCLOSURE OF INTERESTED PARTIES

1.      Counsel and pro se litigants shall appear at an initial pretrial and scheduling conference before

Honorable Nancy F. Atlas
**January 25, 2010 at 02:00 PM**
Courtroom 9F on the 9th Floor
United States Courthouse
515 Rusk Street
Houston, TX 77002.

2.      Counsel shall file within fifteen days from receipt of this Order a certificate with the Clerk listing all persons, associations of persons, firms, partnerships, corporations, affiliates, parent corporations, or other legal entities that are financially interested in the outcome of this litigation. NOTE: If a large group can be specified by a general description, individual listing is not necessary. Underline the name of each corporation whose securities are publicly traded. If new parties are added or if additional persons or legal entities that are financially interested in the outcome of the litigation are identified at any time during the pendency of this litigation, then each counsel shall promptly file an amended certificate with the Clerk.

3.      Counsel shall meet as required by Fed. R. Civ. P. Rule 26(f) and — not less than three (3) days before the Initial Pretrial Conference — shall prepare and file a joint discovery/case management plan containing the information required on the attached form as required by Fed. R. Civ. P. Rule 26(f), as amended December 1, 1993. The Court will conduct the Conference in accordance with Fed. R. Civ. P. 16.

Counsel must deliver to Chambers *courtesy copies* of all documents filed within seven (7) days of the Conference. All such copies must be marked "FOR PRETRIAL CONFERENCE."



4.    Each party shall appear at the conference by an attorney with **full** knowledge of the case and **authority** to bind the client. The Court will prepare a docket control order at the pretrial conference. *See* Court's Procedures, on the Southern District of Texas website at http://www.txs.uscourts.gov.

Counsel should be prepared to argue all pending motions at the Conference. The Court may rule on same.

5.    Counsel who file or remove an action must **serve a copy of this order** with the summons, complaint or with the notice of removal and a copy of this Court's Procedures. In addition, in all removed cases, counsel for the removing party or parties must file with the Court at least three (3) days before the Initial Pretrial Conference the "certificate of service in removed action.".

6.    Counsel shall discuss with their client and each other where *alternative dispute resolution* is appropriate, and at the Conference shall advise the Court of the results of their discussions.

7.    Discovery may be conducted prior to the Initial Pretrial Conference if all name defendants have answered.

8.    For the convenience of out−of−town counsel, the Court will allow participation by telephone if requested by letter to the Court's case manager in writing at least a week in advance of the conference date. No confirmation will be made by the court.

9.    Failure to comply with this order may result in sanctions, including dismissal of the action and assessment of fees and costs.

_____
Nancy F. Atlas
United States District Judge